Graffeo, J.
(dissenting). Because I disagree with the majority’s conclusion that the grievances at issue in these CPLR article 75 proceedings should proceed to arbitration, I respectfully dissent. The facts underlying these proceedings are set forth in the majority opinion and I concur with the majority’s articulation of the two-step analytical framework for determining whether a grievance is arbitrable (see, Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509 [1977]; Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.], 93 NY2d 132 [1999]). The disputes arise from the failure of the Cities of Johnstown and Schenectady to extend to Tier II members of their fire and police departments a 12-month final average salary benefit option used for the calculation of retirement benefits. The majority claims that the Cities’ argument that it would have been illegal for the parties involved to have provided for the extension of these retirement benefits to Tier II employees “misses the point” (majority op at 278) — but that is precisely the point that should lead to a stay of arbitration in these cases.
In my view, these disputes fail the first prong of the Liverpool/ Watertown test — referred to as the “may-they-arbitrate” test— because the statutory condition precedent that must be met before the parties can engage in collective bargaining regarding this type of retirement benefit did not occur. At the time the Cities entered into the respective collective bargaining agreements with the fire and police unions, the “final average salary” component of retirement benefit computation was addressed in then-section 302 (9) (d) of the Retirement and Social Security Law. That statute authorized a municipality, as the employer, to elect to use an employee’s “regular compensation earned from such participating employer by a member during the twelve months of actual service immediately preceding the date of such employee’s retirement” in calculating the employee’s final average salary, provided the employee had been employed by the municipality “on or before June thirtieth, nineteen hundred seventy-three” (former Retirement and Social Security Law § 302 [9] [d]) — a reference that limited the *281 option’s availability to Tier I members of the retirement system. This was an enhanced pension benefit because a member’s final average salary would otherwise have been based on the employee’s “highest average annual compensation earned during any three consecutive years of member service” (Retirement and Social Security Law § 302 [9] [b]). It is important to note that both Cities elected to exercise the option for Tier I employees by adopting and filing legislative resolutions with the State Comptroller that authorized these members of their fire and police departments to be eligible for the more generous 12-month final average salary computation.
After the parties executed the collective bargaining agreements under which the unions brought the grievances at issue, the State Legislature amended article 11 of the Retirement and Social Security Law, which defines the benefits available to Tier II members of public retirement systems. Among the changes, new subdivisions were added to section 443 that authorized an employer to elect to extend the enhanced 12-month final average salary benefit to Tier II members but expressly prohibited compulsory interest arbitration demands for such a benefit (see L 1999, ch 638, § 2; L 2000, ch 109, § 1; Retirement and Social Security Law § 443 [f|, [f-1]).*
In the same legislation, Retirement and Social Security Law § 302 (9) (d) was amended to delete the provision that had previously limited the local option to provide 12-month final average salary eligibility to Tier I members (see L 1999, ch 638, § 1). As a result, in 2000 both Cities were served with policy grievances claiming that their failure to extend the newly-created 12-month final average salary benefit option to *282 Tier II members of the fire and police departments violated the collective bargaining agreements then in effect.
In their CPLR article 75 petitions to stay arbitration, the Cities argued that since the agreements were entered into before the 1999 enactment of the statutory amendments, the grievances were not arbitrable. I believe this contention raises the threshold issue of whether it is legal to submit such disputes to arbitration under the Taylor Law (the first prong of the Liverpool/Watertown test), which inquiry must be answered before considering whether the parties in fact agreed to arbitrate the benefit (the second prong of the test).
Civil Service Law § 201 (4), a provision of the Taylor Law, expressly differentiates between retirement matters and all other issues subject to collective bargaining by excluding retirement benefits from the definition of terms and conditions of employment subject to collective bargaining. It states:
“ Terms and conditions of employment’ means salaries, wages, hours and other terms and conditions of employment provided, however, that such term shall not include any benefits provided by or to be provided by a public retirement system, or payments to a fund or insurer to provide an income for retirees, or payment to retirees or their beneficiaries. No such retirement benefits shall be negotiated pursuant to this article, and any benefits so negotiated shall be void” (Civil Service Law § 201 [4] [emphasis added]).
Under this statutory mandate, it could not be clearer that pension benefits are different from other terms and conditions of employment which may be negotiated in a collective bargaining agreement. Unlike other benefits, public employers are prohibited from negotiating and granting retirement benefits in a collective bargaining agreement that are not expressly provided under state law. The unique needs of administering a statewide retirement system require such restrictions to avoid unduly burdening the state retirement systems by forcing them to simultaneously apply a hodgepodge of varying benefits offered by different municipalities and other public employers to different groups of employees. The fact that the grievance at issue here involves retirement benefits distinguishes it from Watertown (which concerned health insurance benefits), Liverpool (which concerned procedures applicable to a teacher returning from sick leave) and our other grievance arbitration *283 cases (see e.g., Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478 [1995] [employer’s obligation to provide legal defense and indemnification]).
Indeed, the Legislature explicitly stated that the benefit at the heart of this dispute — the extension of the 12-month final average salary benefit for Tier II employees — was not a proper subject of interest arbitration (L 1999, ch 638; Retirement and Social Security Law § 443 [f-1]). This prohibition was intended to preclude employee bargaining representatives from obtaining this benefit unless the local legislative bodies authorize the Cities to offer it.
Because retirement benefits are not a term or condition of employment under the Taylor Law and it would have been illegal for the Cities to have negotiated or agreed to extend this Retirement and Social Security Law § 302 (9) (d) benefit to Tier II employees at the time the collective bargaining agreements at issue were executed, the specific prohibition on interest arbitration found in the 1999 legislation should also bar grievance arbitration of this dispute. This is so because grievances, by definition, arise from benefits agreed to in a collective bargaining agreement. Permitting grievance arbitration of a benefit the Cities could not have lawfully agreed to provide in the collective bargaining agreement circumvents the fundamental purpose of grievance arbitration — to enforce the terms and conditions of the parties’ collective bargaining agreement — and allows the unions to use this procedure to obtain a benefit they could not have negotiated.
Furthermore, I believe the parties would have also been precluded from agreeing to confer a right of eligibility to employees at some future time in the event such a benefit option were later created by law. Any such action on the part of the Cities would directly violate the Taylor Law’s prohibition on negotiating or granting retirement rights not authorized by law (see Civil Service Law § 201 [4]) and would improperly preempt the power of the local legislative bodies to authorize the extension of such benefits — power which the Legislature chose to place exclusively in their hands when it passed the 1999 legislation.
The majority’s focus on the second prong inquiry, that is the “reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA” (Water-town, 93 NY2d at 143), ignores the right of a municipality to first determine if it is able to bear" the cost of extending the *284 12-month final average salary benefit to additional employees and to budget for that additional expense. In this case, the legislative bodies of these municipalities did not opt to extend the benefit to Tier II members under the collective bargaining agreements in effect at the time these grievances were filed. Indeed, to date, those legislative bodies have apparently not elected to extend the benefit.
I also disagree with the majority’s characterization of this analysis as a matter of interpretation of the parties’ collective bargaining agreements or a merits inquiry. Its holding “that an arbitrator will decide whether they intended * * * to extend benefits to Tier II employees if and when it became lawful for municipalities to do so” (majority op at 279) contravenes the local option provision of the statute, thereby violating state law. Because there is no legal authority for an arbitrator to extend such retirement benefits in the absence of municipal authorization, I would reverse the orders of the Appellate Division and stay arbitration.
Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur with Judge Rosenblatt; Judge Graffeo dissents and votes to reverse in a separate opinion.
In each case: Order affirmed, with costs.

 The legislation provided:
“f. Notwithstanding the provisions of subdivisions a, b and c of this section, a participating employer may elect, pursuant to the provisions of paragraph d of subdivision nine of section three hundred two of this chapter, to have the provisions of such paragraph apply to the police officers and firefighters in its employ who are subject to the provisions of this article.
“f-1. A demand in collective negotiations for the additional pension benefit provided by subdivision f of this section shall not be subject to the provisions of paragraph (b) or (c) of subdivision four of section two hundred nine of the civil service law, nor shall such demand be subject to any provision for interest arbitration contained in any local law, resolution or ordinance adopted by any governmental entity pursuant to subdivision one of section two hundred twelve of the civil service law” (emphasis added).