OPINION OF THE COURT
Levine, J.
Peter Anyakora, a resident physician at Harlem Hospital, a public hospital in the City of New York, allegedly refused to admit, examine or treat a woman who was brought by ambulance to the hospital in active labor, despite a direct order to do so from the hospital administrator. The patient gave birth in a hospital admitting room attended only by EMS personnel. Anyakora was charged by the hospital with violating disciplinary rules and was criminally prosecuted for violation of Public Health Law § 2805-b (2) (b).[1] In addition, the patient, Charlesetta Brown, sued Anyakora for medical malpractice, breach of the statutory duty imposed by Public Health Law § 2805-b to provide emergency treatment, and intentional infliction of emotional distress.
Anyakora requested that the City represent and indemnify him in the civil action brought by Brown. The City is contractually obligated to defend and indemnify resident physicians at its public hospitals in malpractice actions pursuant to a collective bargaining agreement entered into by Anyakora’s union, the Committee of the Interns and the Residents, and *483 the New York City Health and Hospitals Corporation.[2] The City denied Anyakora’s request for representation citing General Municipal Law § 50-k, which places certain duties on municipalities to defend and indemnify public employees in civil actions brought against them for their conduct while acting in the performance of their employment duties but limits the obligation to defend and indemnify when the conduct of the employee complained of in the action also constitutes a violation of the municipality’s disciplinary rules (General Municipal Law § 50-k [2], [5]).
Thereafter, the union filed a grievance on behalf of Anyakora alleging that the City’s refusal to provide legal representation violated the malpractice insurance provision of the collective bargaining agreement. After the grievance was denied, the union filed a notice of arbitration and, given an alleged imminent risk of entry of a default judgment in the Brown civil action, commenced this CPLR article 75 proceeding seeking to compel immediate arbitration and to stay the civil action pending the outcome of arbitration. The City moved to dismiss and moved for a permanent stay of arbitration on the grounds that public policy and General Municipal Law § 50-k prohibit government representation or indemnification of a public employee who has been criminally charged for the conduct upon which the civil action is based. Supreme Court rejected all of the City’s motions and granted the union’s application to the extent of directing the parties to proceed to immediate arbitration. The Appellate Division unanimously affirmed.
 We agree with the courts below that no statute or public policy prohibits arbitration of the dispute over the City’s duty to defend Anyakora in the civil damage action against him. The threshold determination as to whether there is a valid, enforceable agreement to arbitrate between a *484 municipality and public employees must proceed in sequence on two levels by answering the following inquiries: (1) are arbitration claims with respect to the particular subject matter of the dispute authorized under the Taylor Law; and (2) do the terms of the particular arbitration clause include this subject area? (Matter of Acting Supt. of Schools [United Liverpool Faculty Assn.] 42 NY2d 509, 513; see also, Matter of Franklin Cent. School [Franklin Teachers Assn.] 51 NY2d 348, 355; Board of Educ. v Barni, 49 NY2d 311.)
In answering the first question, courts must determine that there is nothing in statute, decisional law or public policy which would preclude the municipality and its employee or group of employees from referring the dispute to arbitration (Matter of Acting Supt. of Schools [United Liverpool Faculty Assn.] supra, at 514). If there is some statute, decisional law or public policy that prohibits arbitration of the subject matter of the dispute, then the answer to the first inquiry is no, and the claim is not arbitrable regardless of the answer to the second question (id.). We have thus precluded arbitration in several cases on public policy grounds (see, e.g., Board of Educ. v Areman, 41 NY2d 527 [inspection of teacher personnel files by the Board of Education]; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774 [limitation on the right to terminate nontenured teachers at the end of their probationary period]).
We have made a distinction, however, between disputes in which granting any relief would violate public policy and situations in which public policy would only be violated by granting the remedy requested by one or more of the parties (see, Matter of Port Wash. Union Free School Dist. v Port Wash. Teachers Assn., 45 NY2d 411, 417). In the former situation, courts may intervene and stay arbitration (see, Board of Educ. v Areman, supra). Where an arbitrator may be able to fashion a remedy not in violation of public policy, it would be improper for a court to intervene preemptively (see, Matter of Port Wash. Union Free School Dist. v Port Wash. Teachers Assn., supra, at 418).
The City argues that arbitration of the dispute here is precluded by General Municipal Law § 50-k and public policy. General Municipal Law § 50-k sets forth a municipality’s obligation to defend and indemnify its employees, and concededly does not require representation or indemnification under the circumstances presented in this case. The City argues that *485 because the Legislature has chosen to limit a municipality’s duty to defend and indemnify its public employees under section 50-k, it would be impermissible for it to agree contractually to provide greater coverage for resident physicians employed by its public hospitals. However, this negative implication is not supported by the express language of section 50-k: "[t]he provisions of this section shall not be construed to impair, alter, limit or modify the rights and obligations or and insurer under any policy of insurance” (General Municipal Law § 50-k [7]) and "[t]he provisions of this section shall not be construed in any way to impair, alter, limit, modify, or abrogate or restrict * * * any right to defense and/or indemnification provided for any governmental * * * employee * * * in accordance with * * * any other provision of state, federal or local law or common law” (General Municipal Law § 50-k [9]). Thus the City’s argument that General Municipal Law § 50-k necessarily sets the outer limits of the City’s duty to defend is ineffective to bar arbitration of this dispute.
Moreover, the City’s policy arguments are principally directed at the relief sought by the union. It asserts that public policy would be violated by imposing an obligation upon the City to have to represent an employee in connection with conduct that violates the criminal law and the City’s own disciplinary rules. Even if the City might be prohibited from directly representing this doctor under these circumstances, the policy concerns raised by the City might not preclude affording some other remedy to implement the rights guaranteed resident physicians under the collective bargaining agreement. The policy concerns raised have no bearing on the issue now before us, the arbitrability of the City’s malpractice insurance coverage obligation provided for in the collective bargaining agreement (see, Port Wash., supra, at 418-419). Rather, they are better addressed by the arbitrator who, of course, may take them into account in fashioning a remedy (id., at 418). In any event, "[s]hould the arbitrator’s exercise of remedial discretion end in perceived policy conflicts, review by the courts will not have to rest on speculation or assumption” (id., at 419).
Therefore, because the malpractice insurance clause of the contract provides that the City will defend and indemnify its employee medical residents in malpractice actions, and because no statute or policy prohibits the City from furnishing such insurance coverage as a "term[ ] and condition[ ] of employment” (Civil Service Law § 204 [the Taylor Law]), the *486 first Liverpool inquiry is satisfied. The second inquiry is also satisfied. The arbitration clause of the collective bargaining agreement broadly provides that all grievances, that is, "disputéis] concerning the application or interpretation of the terms of this collective bargaining agreement” (collective bargaining agreement art XIV), shall be submitted to arbitration. The dispute here — whether the civil suit falls within the malpractice provision of the parties’ collective bargaining agreement and whether that clause affords Anyakora a remedy under the circumstances — clearly involves a question of contract interpretation. Hence, it falls squarely within the arbitration agreement. It follows that the courts below were correct in directing submission of the dispute to an arbitrator.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
Order affirmed, with costs.

. Anyakora was found guilty of two counts of misconduct after a disciplinary hearing, and a 30-day suspension was recommended. The plaintiff union representing him requested arbitration of the disciplinary dispute, and New York City Health and Hospital’s Corporation did not resist arbitration of that dispute. However, the arbitration was held in abeyance while the criminal charges were pending. Anyakora was convicted of the criminal charges following a jury trial, and we are informed by the parties that he has appealed the convictions.

. Article XIII, "Malpractice Insurance” provides:
"Section 1
"The Corporation shall fully indemnify each HSO [house staff officer] against any judgment rendered personally against him/her for malpractice of medicine * * * rendered during the HSO’s service at a municipal hospital * * *
"Section 2. * * *
"(c) The defense of all claims, actions, and proceedings within the purview of this Article shall be conducted by the City. The Corporation Counsel of the City shall appear and defend such actions and proceedings on behalf of the HSOs.”