OPINION OF THE COURT
Wesley, J.
The issue we must address today is whether public policy bars arbitration of this dispute over whether the employee rights provisions of a collective bargaining agreement (CBA) can be invoked to limit or restrict the procedures of criminal investigations commenced by the New York City Department of Investigation (DOI). We conclude that it does.
In February 1996, DOI subpoenaed several firefighters as part of criminal investigations it was conducting. One investigation concerned an attempt by a firefighter to obtain higher pension benefits by fraudulently claiming that he sustained a disabling injury in the line of duty. The scheme involved one firefighter calling in a false alarm to afford the injured firefighter the opportunity to claim that his injury occurred in responding to the alarm. Among those firefighters interviewed were members of appellant Union, Uniformed Fire Officers Association, Local 854 (UFOA).
The applicable citywide CBA contains provisions for individual employee rights under Article XVII and arbitration of griev *279 anees under Articles XVIII and XXI. Article XVII relates to interrogations, interviews, trials and hearings. The protections afforded by Article XVII include the requirement that the employee be given written notice of an interview, interrogation, trial or hearing. The employee must be informed of the subject matter of the proceeding and must be informed if he or she is being considered a suspect or a non-suspect. Any questioning of an employee is to be of reasonable duration and the interrogator is prohibited from using offensive or profane language, from threatening the employee for failure to answer questions and from promising anything to the employee if that employee does answer questions. Where an employee is “a suspect in a departmental investigation or trial” the employee must be advised of the right to refuse to answer questions, that the answers may not be used against him or her in criminal proceedings so long as they are truthful and that the failure to answer renders the employee subject to dismissal. The employee must also be advised of the right to counsel and of the right to union representation. If the employee invokes the right to counsel and/or union representation, the matter must be adjourned for two working days.
Article XVTI further imposes restrictions on the scope of any questioning concerning personal behavior outside of work except with respect to matters related to official business, extra-departmental employment, conflict of interest, injuries or illness, residency, performance as a volunteer firefighter or loss or improper use of departmental property. Non-suspect employees are required to cooperate and their statements may not be used against them. Finally, where the City fails to comply with the provisions of Article XVII, any questions put to an employee shall be withdrawn and the refusal to answer any such questions shall not be prejudicial to the employee.
During one of the February 1996 DOI interviews, a fire officer’s union representative was excluded over objections of the union counsel. At another interview, the union counsel questioned the adequacy of the notice under Article XVII. The Union thereafter filed a request for arbitration of the grievance, claiming that the City was violating Article XVII by the failure of its agency, DOI, to abide by Article XVII. The City challenged the arbitrability of the request before appellant New York City Board of Collective Bargaining (BCB). The BCB issued a determination finding the dispute to be arbitrable.
The City thereafter commenced this special proceeding pursuant to CPLR articles 75 and 78 in Supreme Court, seeking to *280 annul the BCB’s determination and to enjoin arbitration of the dispute. According to the City, it never agreed to arbitrate the procedures employed by the DOI in conducting its criminal investigations; the CBA cannot, as a matter of public policy, supplant or impair those procedures; and the grievances are not arbitrable because to do so would violate public policy.
Supreme Court set aside the BCB’s determination and enjoined arbitration, stating that “the core function of ensuring governmental integrity is a public policy sufficiently strong as to preclude referral of this dispute to arbitration.” (Matter of City of New York v DeCosta, 176 Misc 2d 936, 943.) The Appellate Division unanimously affirmed, holding that public policy, as reflected in the New York City Charter and in decisional law, prohibits any interference with DOI’s authority to question public employees in the course of an investigation (Matter of City of New York v Uniformed Fire Officers Assn., 263 AD2d 3). We now affirm.
Determining arbitrability requires a two-pronged inquiry (Matter of Board of Educ. [Watertown Educ. Assn.], 93 NY2d 132, 137 [citing Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.), 42 NY2d 509]). First, a court must decide whether “arbitration claims with respect to the particular subject matter of the dispute [are] authorized” (Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650, 656; see also, Matter of Board of Educ. [Watertown Educ. Assn.], supra, 93 NY2d, at 137); i.e., that the claims are “lawfully fit for arbitration” (Matter of Barnes [Council 82, AFSCME], 94 NY2d 719, 723). Second, the court must ascertain whether the authority to arbitrate was in fact exercised and the parties consented by the terms of their particular agreement to refer disputes in this specific area to arbitration (Matter of Board of Educ. [Watertown Educ. Assn.], supra, 93 NY2d, at 138 [quoting Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.), 42 NY2d 509, 513, supra]).
Under the first prong, the subject matter of the dispute controls the analysis (Matter of Board of Educ. [Watertown Educ. Assn.], supra, 93 NY2d, at 137; Matter of Blackburne [Governor’s Off. of Empl. Relations], 87 NY2d 660, 665). The court must determine “that there is nothing in statute, decisional law or public policy which would preclude the municipality and its employee or group of employees from referring the dispute to arbitration” (Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484). If there is some *281 statute, decisional law or public policy that prohibits arbitration of the subject matter of dispute, “then the answer to the first inquiry is no, and the claim is not arbitrable regardless of the answer to the second question” (id., at 484; see, Matter of Blackburne [Governor’s Off. of Empl. Relations], supra, 87 NY2d, at 665). We have recognized limited instances where arbitration is prohibited on public policy grounds alone (see, e.g., Matter of Blackburne [Governor’s Off. of Empl. Relations], 87 NY2d 660, supra [termination of an employee who violated the Hatch Act]; Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn., 49 NY2d 732 [school district’s ability to lay off those with the least seniority to maintain academic standards]; Board of Educ. v Areman, 41 NY2d 527 [school board’s right to inspect teacher personnel files]; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774 [school board’s ability to terminate probationary teachers and make tenure decisions]).
The public policy at stake here is DOI’s ability to conduct criminal investigations. We have recognized that “[p]ublic policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may * * * restrict the freedom to arbitrate” (Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617). From our review of the statutory and decisional law concerning the DOI, its purpose and its powers, we conclude that a strong public policy enjoins the arbitration of the grievance here.
The Legislature has recognized the importance of allowing a city to conduct investigations into its internal affairs. General City Law § 20 (21) empowers every city in the State to “investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations.” DOI is the entity charged by the City of New York with the critical responsibility of investigating possible criminal conduct and conflicts affecting City agencies or City employees (NY City Charter § 803). The power to investigate matters pertaining to corrupt or other criminal activity, conflicts of interest, gross mismanagement or abuse of authority within the City, is firmly vested with DOI (see, NY City Charter § 803 [b]; NY City Mayoral Executive Order No. 16, §§ 1, 4 [f] [1978], as amended by NY City Mayoral Executive Order No. 78, § 1 [1984]). To effectuate this mandate, DOI is authorized “to compel the attendance of witnesses, to administer oaths and to examine such *282 persons as [it] may deem necessary” (NY City Charter § 805 [a]; see also, Matter of Edge Ho Holding Corp., 256 NY 374).
It is evident from the Charter that DOI enjoys full latitude in conducting its investigations; section 1128 (a) of the City Charter prohibits any person from preventing, interfering with, obstructing or hindering in any way, an investigation conducted pursuant to the Charter and renders any attempt to do so cause for suspension or removal from office or employment. Moreover, section 1128 (b) of the Charter mandates full cooperation with the Commissioner of the DOI.
The courts have also recognized the important role DOI plays in facilitating the honest workings of the City of New York. As Chief Judge Cardozo noted in sustaining the broad investigatory powers of the Commissioner of Accounts (the predecessor to the Commissioner of the DOI), “[t]he powers devolved by the charter upon the Commissioner of Accounts are of great importance for the efficient administration of the huge machinery of government in the city of New York” (Matter of Edge Ho Holding Corp., supra, 256 NY, at 381; see also, Matter of Hertle [Ahearn], 120 App Div 717, 721, affd 190 NY 531 [“In a great city like New York, working under a charter as complex as its charter is, public policy requires that every available means of examining the administration of the various departments and offices of the city government be utilized to their fullest extent and statutes having this object in view should be liberally construed”]).
The City (and its residents) has a significant interest in ensuring that the inner workings of the machinery of public service are honest and free of corruption. We conclude that this public policy restricts the freedom to arbitrate under the circumstances presented here (see, Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617, supra). To allow an arbitrator to grant a city employee or a union the ability to restrict the DOI’s investigatory procedures by invoking the employee rights provisions of a CBA would amount to an impermissible delegation of the broad authority of the City to investigate its internal affairs (see, Matter of Blackburne [Governor’s Off. of Empl. Relations], supra, 87 NY2d, at 666). It is DOI, and not an arbitrator, that is the entity mandated by law to control all aspects of the criminal investigation; permitting an arbitrator, who may not have any background information on the nature or complexity of the DOI investigation or the severity of the offense, to dictate the procedures over who should be present at a DOI *283 interview or to direct that notice be given to an employee concerning the subject matter of the DOI investigation would only hinder the DOFs role as a fact investigator and would contravene the City Charter’s prohibition against interference with an investigation (NY City Charter § 1128 [a]). Moreover, subjecting DOI inquiries to the arbitration process would introduce elements that could compromise criminal investigations.
We further reject the contention of the Union and our dissenting colleague that the courts below acted too quickly in staying the arbitration in that an arbitrator could fashion an award to determine the dispute in a manner that would not offend public policy considerations.
We have recognized that judicial intervention to stay arbitration on public policy grounds is not without restrictions (see, Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650, 656, supra; Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 418). For example, we have noted that although a school district’s statutory authority in certain areas of school operation may not be bargained away or otherwise delegated, the violations of the procedural and substantive aspects of those reserved powers must nevertheless be treated separately (see, Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 417-418, supra). While a Board of Education may not surrender its ultimate responsibility for making tenure decisions or restrict its exclusive right to terminate probationary teacher appointments, the courts may not nullify the bargained-for procedural steps preliminary to the board’s final action to grant or withhold tenure (id., at 418 [quoting Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778]).
Thus, in Port Washington, we acknowledged that situations may exist in which although public policy would be violated by granting the remedy requested by one or more of the parties, it may still be premature for a court to intercede because the arbitrator may be able to fashion a remedy not in violation of public policy (see, Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 418, supra; see also, Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484, supra). However, we have also recognized other situations in which no remedy could be granted without violating public policy (see, Matter of Blackburne [Governor’s Off. of Empl. Relations], 87 NY2d 660, supra). *284 In Blackburne, an employee, who had violated the Federal Hatch Act, claimed that he was terminated in violation of the procedural guarantees found in the CBA. This Court held that the arbitrator could not mandate compliance with the CBA’s procedural guarantees concerning employee termination without subjecting the State to loss of Federal funds for the Hatch Act violation (id., at 666). To allow the arbitrator to make such a decision constituted an impermissible delegation of the State’s sovereign authority (id.). Thus, where a court examines an arbitration agreement or an award on its face and concludes that the granting of any relief would violate public policy without extensive fact-finding or legal analysis, courts may then intervene and stay arbitration (see, Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484, supra; Matter of Sprinzen [Nomberg], 46 NY2d 623, 631).
In this case, the procedural protections afforded a City employee under Article XVII of the CBA cannot be separated from their impact on a DOI criminal investigation. The granting of any relief under the procedural protections of the CBA would not only impinge on DOI’s ability to conduct a criminal investigation (see, Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484, supra), but would add another layer of process, decision-making and potential conflict. Thus, to the extent that public policy considerations preclude arbitration here, the courts below did not act precipitously and arbitration must be permanently stayed.
Finally, we conclude that, in this case, BCB’s determination that the dispute is arbitrable is not entitled to due deference. The determination of the BCB, the statutorily authorized neutral adjudicative agency charged with making determinations under the New York City Collective Bargaining Law, will not be disturbed unless it is arbitrary and capricious or an abuse of discretion, or unless arbitration of the dispute offends public policy (Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650, 656, supra; see also, Matter of Levitt v Board of Collective Bargaining, 79 NY2d 120, 127-128). Because we conclude that the arbitration here is prohibited by public policy, the courts did not err in overturning the BCB’s determination.
Contrary to the dissent, we feel that it is clear from the record that DOI was conducting a criminal investigation; the investigations did not involve the conduct of the fire officers themselves but concerned their observations as witnesses to allegations of fraud. Moreover, the Union does not contest that *285 the DOI investigations conducted here began as criminal investigations. Rather, the Union contends that there is no distinction between DOI’s power to conduct criminal investigations and its power to conduct disciplinary investigations (Betheil Affirmation in Opposition to Mot, Joint Record on Appeal, at 205 [“There is no substantive difference as far as the subject matter of an investigation between a criminal investigation and a departmental investigation which may be the basis for departmental charges”]). The Union therefore seeks arbitration of all investigation-based claims (criminal and disciplinary).
Lastly, we agree with our dissenting colleague that there is no concern in this case that arbitration could delay criminal investigations. The courts below granted the City’s stay, avoiding any further possible interference with the criminal investigation through after-the-fact remedies. To the extent that the dissent contends that the Union is merely seeking a post-deprivation remedy, that belies the fact that the Union is seeking to restrict all future DOI investigations involving its members (see, UFOA Request for Arbitration, id., at 212). The Union seeks the remedy of “Compliance by the Department of Investigation with contractual requirements when noticing and conducting investigations involving members of the UFOA bargaining unit” (id.). The Union is not seeking the immunization of statements already given by its member officers in this case (although an arbitrator might decide that is a remedy); rather the remedy sought is for an arbitrator to determine when and how DOI investigations involving UFOA members are to be conducted. That is a power the City cannot give.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye (dissenting). In a freely-negotiated collective bargaining agreement (CBA), the City of New York agreed to give fire officers certain procedural rights — including notice, representation by counsel and a union representative, and use immunity — when interrogated by their “Employer.” When interviewing several fire officers in an investigation concerning alleged pension fraud, the New York City Department of Investigation (DOI) refused to recognize those rights. After the completion of the investigation (which resulted in a firefighter — not a fire officer — pleading guilty to a crime), the Uniformed Fire Officers Association filed a grievance. The Board of Collective Bargaining (BCB) held that an arbitrator should resolve two questions: whether the procedural protec *286 tions in the collective bargaining agreement apply to criminal investigations conducted by DOI, and if so, whether the officers’ rights were violated in the case at hand. The Majority holds that public policy forbids these questions from even being submitted to an arbitrator. Because I believe that, under the particular circumstances here, the City’s petition to stay arbitration was premature, I respectfully dissent.
Several longstanding policies of this State weigh against granting the City’s petition to stay arbitration at this early stage.
First, the public policy exception to arbitrability is very narrow. “[Jjudicial intervention to stay arbitration on public policy grounds is exceptional and itself limited to circumstances specifically identified or rooted in statute or case law” (Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650, 656; see also, Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.], 90 NY2d 364, 372; Matter of Board of Educ. v Arlington Teachers Assn., 78 NY2d 33, 37; Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899). By and large, this Court has “overwhelmingly rejected contentions by public employers that particular issues fall outside the scope of permissible grievance arbitration” (Matter of Board of Educ. [Watertown Educ. Assn.], 93 NY2d 132, 139 [collecting cases]). As this Court recently reaffirmed, public policy bars arbitration only where “strong and well-defined policy considerations embodied in constitutional, statutory or common law prohibit a particular matter from being decided or certain relief from being granted by an arbitrator” (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 327).
Further, a petition to stay arbitration is an extreme remedy that will be granted only if there is no possibility that the arbitrator could fashion any relief consistent with public policy. Where the arbitrator has the ability to impose “adequately narrowed” relief and thus avoid violating public policy, “a stay of arbitration on policy grounds is premature and unjustified” (Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 418). Indeed, where an arbitrator “may be able to fashion a remedy not in violation of public policy, it would be improper for a court to intervene preemptively” (Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484):
*287 In addition, the BCB is entitled to substantial deference, and its determination as to whether a claim is arbitrable “may not be upset unless it is arbitrary and capricious or an abuse of discretion, as the Board is the neutral adjudicative agency statutorily authorized to make specified determinations” (Matter of New York City Dept. of Sanitation v MacDonald, supra, 87 NY2d, at 656; see also, Matter of Levitt v Board of Collective Bargaining, 79 NY2d 120, 127-128).
In the case at hand, these combined factors lead me to conclude that the City’s petition to stay arbitration was premature. I of course acknowledge, as the Majority skillfully recounts, the broad powers given to DOI to investigate crime and corruption in City government. And I share the Majority’s concern regarding undue interference with serious criminal investigations. But a stay of arbitration should be reserved for the clearest of cases where there is no question that a strong public policy bars arbitration of a grievance, and where there is no possibility that the arbitrator could fashion an acceptable, intermediate remedy. Here, we are a long way from requiring the immediate and drastic remedy of a stay.
As an initial matter, the arbitrator could very well issue a ruling that would moot the City’s public policy argument. As the Majority acknowledges, the City’s argument rests on the assertion that the collective bargaining agreement impedes “DOFs ability to conduct criminal investigations” (Majority opn, at 281 [emphasis in original]). We do not yet know, however, whether the CBA applies to criminal investigations, or, for that matter, to any investigation conducted by DOI. Indeed, the Individual Rights provisions of the CBA make repeated references to interrogations by the “Employer,” and to “Departmental” investigations and trials. Arguably, these provisions apply only to internal Fire Department investigations— not to DOI investigations or serious criminal investigations. Were the arbitrator to make such a finding, the CBA would not violate public policy. Alternatively, the arbitrator could find that some of the CBA provisions apply to DOI investigations but not others — for instance, that fire officers are entitled to notice of interrogations but not use immunity or union representation. I am not convinced that such a finding would necessarily contravene public policy. At the very least, it would be beneficial for the courts to have the decision of the arbitrator— including an authoritative interpretation of the CBA — before they are forced to determine whether the CBA violates public policy.
*288 A stay would also be particularly inappropriate here because there appear to be lingering factual questions that are not made clear by the record. Significantly, contrary to the Majority, it is not clear whether DOI in this case was conducting a criminal investigation of the fire officers (see, Majority opn, at 284-285). The City asserts that it was; the Union, however, insists that this was merely a disciplinary investigation. The record before us contains no details concerning the investigation, except that a ñrefighter eventually pleaded guilty to a crime. Notably — and disturbingly — the City has not rested its argument on the particular importance of this investigation, but instead contends that all DOI investigations — whether criminal or disciplinary in nature — are immune from the CBA provisions as a matter of public policy. I, however, find the nature of the particular investigation of critical importance in determining whether the public policy exception applies. Given the lack of factual detail in the record, this is yet another matter on which the arbitrator should be permitted to make a finding before the courts invoke the broad sweep of the public policy exception.
Finally, there is no concern that arbitration would delay a criminal investigation in the case at hand. The investigation has already been completed; the Union has not sought to stay interrogations or any investigative proceedings. Rather, the Union is seeking a post-deprivation remedy for alleged violations that occurred in the past. And contrary to the Majority, the Union is not seeking to arbitrate “all future DOI investigations” (Majority opn, at 285 [emphasis in original]). Rather, it is seeking only to arbitrate the alleged violations under the particular facts of the case at hand. Thus, there is no need for an unusually expeditious resolution in the instant case.
The Majoritys reliance on Matter of Blackburne (Governor’s Off. of Empl. Relations) (87 NY2d 660) in support of an early stay is misplaced. In Blackburne, a State employee was removed for violating a provision of the Federal Hatch Act (5 USC § 1502 [a] [3]) barring employees of State agencies receiving Federal funds from running for elective office. This Court held that arbitration of the employee’s grievance was barred by public policy, because the “Hatch Act’s mandate that the State employer either rid itself of politicians or lose Federal funds embodies an important public policy that can only be effectuated by a sovereign determination” (id., at 666). In Blackburne, there was a crystal-clear violation of a specific public policy barring State employees from running for office. No factual is *289 sues remained unresolved, and there was no possibility that an arbitrator could grant intermediate relief that would not violate public policy. Here, by contrast, many questions remain that should be resolved by the arbitrator in the first instance, before the courts consider the public policy question.
I would reverse the order of the Appellate Division, vacate the stay and remit the matter for further proceedings before the arbitrator.
Judges Smith, Levine, Ciparick and Rosenblatt concur with Judge Wesley; Chief Judge Kaye dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.