McCooe, J. (dissenting).
I respectfully dissent. The public policy favoring arbitration should prevail on legal, factual and pragmatic grounds. The tenant who agreed to arbitrate this type of dispute should be compelled to. The majority has failed to establish that this HP proceeding comes within the “very narrow” exception and “extreme remedy” precluding arbitration on public policy grounds. This appears to be a case of first impression.
The underlying dispute between the parties is as to who should perform the plastering and painting in the tenant’s apartment. The two principals of the subject premises were formerly interim multiple dwelling tenants covered under the Loft Law, as was this tenant. They purchased the building from the former owner resulting in protracted litigation commenced by this tenant in the Supreme Court seeking to set aside the sale. The particularly acrimonious case was finally settled after extensive negotiations. The settlement agreement encompassed a lease with unusual terms reflecting the extent of the negotiations.
The lease provided the tenant with a life estate, fixed the amount of the rent without any increases for 15 years and provided for set increases after that date.
The following are the relevant provisions of the lease:
“1) tenant [took] the apartment ‘as is’
“2) tenant [agreed] to be responsible for maintaining and repairing the premises at his own cost and expense throughout the term of the life estate,
“3) tenant shall keep the interior of the apartment (including interior walls, floors, ceilings, windows, windowpanes, window frames, sashes, sills entrance doors, frames and saddles) in good repair, shall do all of the painting and decorating required to his apartment. . .
“4) tenant is responsible to maintain and repair his space at his own cost and expense throughout the term of the lease, including all painting and decorat *63 ing thereof, the garbage removal therefrom and providing hot water therefore . . .
“5) Any controversy or claim arising out of or relating to this Agreement or to the lease, or the breach thereof, except those issues which could result, directly or indirectly, in an eviction of Tenant, shall be settled by arbitration, administrated by the American Arbitration Association in accordance with its commercial arbitration rules, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The prevailing party in an arbitration proceeding shall be entitled to reasonable counsel fees, and costs including the cost of any expert witnesses. The extent of such fees and costs shall be determined by arbitration as provided. In the event neither party wholly prevails, the arbitrator shall apportion fees and costs. No issues relating to the termination of the lease and/or eviction of the Tenant shall be arbitrated and must be brought in a Civil or Supreme Court proceeding or action in which proceeding or action attorneys’ fees shall be collectible by the prevailing party” (emphasis supplied).
The carefully crafted last paragraph imposing limitations on the issues subject to arbitration clearly indicates the extent of the settlement negotiations embodied in the lease. The lease further provides that the landlord was responsible for structural repairs including installing a new roof which it did. There is no dispute that there was some leakage from the roof after a storm but the landlord claims it was repaired. An HPD inspector’s report supports that claim.
The tenant commenced this HP proceeding claiming damage to his apartment from a “leaking roof’ and that the walls of his apartment were water damaged. The Housing Court Judge requested an inspection by HPD. The inspector found that “at time of inspection there was no leaks.” He found that there was water damage in the apartment requiring plastering and painting. This violation would constitute a basis for the HP proceeding unless the arbitration provision of the lease is controlling.
The first reason for my disagreement with the majority and the Housing Court decision is that in their statement of facts they appear to factually rely on the tenant’s complaint referable to compelling the landlord to repair the roof in addition to the “water damage to his apartment.” Since the HPD inspector’s *64 report indicates “at time of inspection there was no leaks” in the roof, the substantive issue for determination should be limited to water damage to the apartment as found by the inspector which would require plastering and painting only by the tenant under the terms of the lease and not roof repair by the landlord.
The legal public policy position advanced by the majority is based upon the single fact that this is an HP proceeding. It is not that public policy prohibits arbitration of this type of dispute. It is the forum and not the lease provisions which the majority’s public policy argument is directed to.
Therefore, the narrow issue is whether public policy requires resolution of this dispute in an HP proceeding. Before that issue is reached, the practical question is what is going to be resolved in that proceeding? Unlike the typical HP proceeding where the landlord refuses or neglects to perform necessary repairs for a myriad of reasons, the basis for the landlord’s refusal is that the lease requires the tenant to perform the repairs, apart from the arbitration issue. This is within the scope of the arbitration clause and the arbitrator’s decision is subject to judicial review.
This is a private dispute, involving a garden variety issue, between two parties who freely contracted in a settlement agreement as to its terms including the arbitration clause. They both agree that the plastering and painting should be done. The issue is who should do it. I disagree with the majority’s broad policy statements as to the scope of an HP proceeding, the broad public interest involved and that “critical decisions carrying potential adverse consequences may result” affecting the general public. The majority does not cite any case supporting its position that this arbitration clause is violative of public policy requiring the substantive issue to be determined in an HP proceeding. The captions of the cases cited indicate the factual distinction with this case. They do not involve a contract negotiated by two private parties affecting only themselves where the facts are sui generis.
Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO (95 NY2d 273 [2000]) cited by the majority is readily distinguishable on the facts but states the applicable law. The public policy issue was whether the provisions of a collective bargaining agreement restricted the Department of Investigation from conducting a criminal investigation of union employees. The majority held that public policy prevailed. Chief Judge Kaye in her dissenting opinion stated the legal principles applicable here.
*65 “First, the public policy exception to arbitrability is very narrow. ‘[Jjudicial intervention to stay arbitration on public policy grounds is exceptional and itself limited to circumstances specifically identified or rooted in statute or case law’. By and large, this Court has ‘overwhelmingly rejected contentions by public employers that particular issues fall outside the scope of permissible grievance arbitration’. As this Court recently reaffirmed, public policy bars arbitration only where ‘strong and well-defined policy considerations embodied in constitutional, statutory or common law prohibit a particular matter from being decided or certain relief from being granted by an arbitrator’.
“Further, a petition to stay arbitration is an extreme remedy that will be granted only if there is no possibility that the arbitrator could fashion any relief consistent with public policy. Where the arbitrator has the ability to impose ‘adequately narrowed’ relief and thus avoid violating public policy, ‘a stay of arbitration on policy grounds is premature and unjustified’. Indeed, where an arbitrator ‘may be able to fashion a remedy not in violation of public policy, it would be improper for a court to intervene preemptively.’ ” (Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO, 95 NY2d 273, 286 [2000] [emphasis added; citations omitted].)
Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3, Town of Huntington (33 NY2d 229, 236 [1973]) cited by the majority held that public policy did not restrict the right to arbitrate the labor disputes in question and that arbitration was “so preferable.”
A second ground for reversal is that an HP proceeding cannot give complete relief. The tenant is also seeking compensatory damages for personal property damaged by the leak. Whether the owner or tenant is successful in the HP proceeding, this issue would be arbitrable since it arises from an alleged breach of the lease.[1]
Since this is a case of first impression, it raises questions not previously considered. Assuming that the majority prevails and the HP proceeding is held, must the Housing Court Judge direct *66 the landlord to correct the statutory violation finding the duty nondelegatable without regard to the terms of the lease?[2] Assuming the Housing Court does not consider the lease and directs the landlord to cure the statutory violation, does the landlord have a contractual right to seek indemnification similar to a Labor Law statutory violation in the arbitration hearing?
The point is that the HP proceeding will not end the dispute but may result in a summary disposition against the landlord if the lease is not considered. Arbitration would resolve all issues including responsibility for the painting, any damage to personal property and the prevailing party’s right to attorney’s fees.
In summary, the public policy favoring arbitration should prevail because it preserves judicial resources, the integrity of settlement agreements, the contractual right to a hearing on the merits, attorneys fees to the prevailing party and resolves all disputes between the parties in one hearing. The HP proceeding does none of these things. This is a dispute between a landlord and a tenant with a life estate who freely negotiated a settlement agreeing to arbitrate and now seeks to renege on the settlement agreement.
Any claimed public policy in directing an HP proceeding has not been shown. The majority has failed to establish that an HP proceeding is a “very narrow” exception to the public policy favoring arbitration and warrants the “extreme remedy” of denying arbitration and of directing an HP proceeding.
The order denying the motion to compel arbitration should be reversed and the motion granted.
McKeon, PJ., and Davis, J., concur; McCooe, J., dissents in a separate opinion.

. The language “[a]ny controversy” in the arbitration clause is broad enough to include any negligence claims referable to the leaks.

. The Housing Maintenance Code provides that if the owner fails to correct the violation after 30 days then the Court “shall direct the owner to correct the violation and shall assess penalties” (Administrative Code of City of NY § 27-2115 [i] [emphasis supplied]).