Matter of State of New York - Unified Ct. Sys. v Court Officers Benevolent Assn. of Nassau County (2026 NY Slip Op 50384(U))

[*1]

Matter of State of New York - Unified Ct. Sys. v Court Officers Benevolent Assn. of Nassau County

2026 NY Slip Op 50384(U)

Decided on March 24, 2026

Supreme Court, Nassau County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 24, 2026
Supreme Court, Nassau County

In the Matter of the Application of 
 State of New York - Unified Court System, Petitioner, For an Order and Judgment Staying Arbitration 
 Pursuant To Article 75 of the Civil Practice Law and Rules

againstCourt Officers Benevolent Association of Nassau County, 
 and PETER PICIULO, as President thereof, Respondents.

Index No. 620576/2025

Michael John Siudzinski, Esq.Attorney for petitioner New York State Office of Court AdministrationDavis & Ferber, LLCBrian Clark Mitchell, Esq.Attorney for respondents Peter Piciulo andCourt Officers Benevolent Association of Nassau County

Robert S. Ondrovic, J.

On August 19, 2024, the State of New York — Unified Court System (hereinafter UCS) filed a petition pursuant to CPLR article 75 to permanently stay arbitration of a grievance filed on April 12, 2024, by the respondents Court Officers Benevolent Association of Nassau County (hereinafter COBANC) and Peter Piciulo, as president (hereinafter, together with COBANC, the [*2]respondents).
The respondents' grievance alleged that the UCS violated the parties' 2021-2026 Collective Bargaining Agreement (hereinafter CBA), when the Honorable Norman St. George (hereinafter Judge St. George), as First Deputy Chief Administrative Judge (hereinafter FDCAJ), "made disciplinary charges against COBANC members, designated hearing officers for the determination of disciplinary charges, failed to consult with COBANC to establish a panel of qualified persons who may be designated to conduct disciplinary hearings, and exercised jurisdiction over COBANC members for disciplinary purposes even though he was no longer the Deputy Chief Administrative Judge (Courts Outside New York City)" (see NYSCEF Doc No 6).
The relief sought by the respondents was for Judge St. George to "[c]ease and desist and reassign all current investigations and disciplinary matters involving COBANC members to James P. Murphy (Deputy Chief Administrative Judge Courts Outside New York City)" (see NYSCEF Doc No 6).
On March 29, 2024, the Director of Labor Relations issued a Step 2 Determination denying the grievance in its entirety.
By letter dated April 12, 2024, the respondents filed a demand for arbitration.
Relevant Administrative Orders
Pursuant to Administrative Order dated August 19, 2021, the then-Chief Administrative Judge (hereinafter CAJ), confirmed the designation of Judge St. George as Deputy Chief Administrative Judge for the Courts Outside the City of New York (hereinafter DCAJ ONYC), effective September 1, 2021 through December 31, 2021. The CAJ reaffirmed this designation each year thereafter.
Pursuant to Administrative Order dated June 2, 2023, the CAJ confirmed the designation of Judge St. George as FDCAJ. As FDCAJ, Judge St. George's responsibilities include, among other things, overseeing "all the Courts in the Tenth Judicial District-Nassau and Suffolk Counties and shall have authority over all matters in the collective bargaining agreements that are otherwise reserved to the [DCAJ ONYC]" (see AO/160/2023). A few days later, on June 5, 2023, UCS issued a press release announcing that Judge Murphy was appointed DCAJ ONYC and was succeeding Judge St. George, who was appointed FDCAJ.
By Administrative Order dated December 21, 2023, the CAJ continued the designation of Judge St. George as FDCAJ "to exercise the powers and perform the duties set forth in the Chief Judge's Administrative Delegation Number 3 (22 NYCRR 82.1)" and as DCAJ ONYC "to exercise the powers and perform the duties set forth in the Chief Judge's Administrative Delegation Number 2 (22 NYCRR 81.1), in the Tenth Judicial District" through December 31, 2024 (see AO/389/2023). The CAJ also continued the designation of Hon. James P. Murphy as DCAJ ONYC "to exercise the powers and perform the duties set forth in the Chief Judge's Administrative Delegation Number 2 (22 NYCRR 81.1), in the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Judicial Districts" (id.).
Relevant Provisions of the CBA
Article 16 of the CBA, entitled "Disciplinary Procedure," provides in relevant part:
16.2 Procedure. An officer or employee against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him/her and shall be allowed at least ten days for answering the same in writing. Service of a copy of the charges shall be made by personal service, if possible, and in a sealed envelope. Such service shall be carried out by the Deputy Chief Administrative Judge (Courts Outside New York City) or his/her designee provided the designee is not a member of the same bargaining unit as the employee served. If service cannot be effectuated by personal service, it shall be made by certified mail, return receipt requested. The Union shall be advised by certified mail, return receipt requested, of the name and work location of the officer or employee against whom charges have been preferred. The charges shall be made by the Deputy Chief Administrative Judge (Courts Outside New York City) having administrative jurisdiction over said courts or court-related agency where the employee is assigned. The hearing shall be held by a person designated by the Deputy Chief Administrative Judge (Courts Outside New York City) for that purpose. The Deputy Chief Administrative Judge (Courts Outside New York City) shall, upon consultation with the Union as provided in Section 16.9, establish a panel of qualified persons who may be designated to conduct the hearing.16.6 Review of Penalty or Punishment. Amy officer or employee believing himself/herself aggrieved by a penalty or punishment pursuant to the provisions of this Article, may appeal from such determination by petition to the Chief Administrative Judge of the Courts or by an application to the courts in accordance with the provisions of Article 78 of the Civil Practice Law and Rules.16.9 Hearing Officer Panel. The State and the Union shall meet in a Labor/Management Subcommittee to discuss the establishment by the State of a panel to act as Hearing Officers on charges made against officers or employees pursuant to this Article. The Subcommittee shall discuss and make recommendations concerning the composition of, and selection from, a fixed panel of persons who are qualified to act as Hearing Officers and from whom the State selects one or more persons to hear employee appeals of disciplinary charges. Such recommendations shall be submitted to the Deputy Chief Administrative Judge (Courts Outside of New York City) on whose behalf such Hearing Officers are designated to hear such charges.Article 18 of the CBA, entitled "Grievance Procedures," provides in relevant part:
18.1 Definitions A contract grievance is a dispute concerning the interpretation, application or claimed violation of a specific term or provision of this Agreement. Other disputes which do not involve the interpretation, application, or claimed violation of a specific term or provision of this Agreement including matters as to which other means of resolution are provided or foreclosed by this Agreement, or by statute or administrative procedures, shall not be considered contract grievances. A contract grievance does not include matters which are grievable under the non-contract grievance procedure.18.2 A non-contract grievance is a dispute concerning:(a) Conditions of employment affecting the health or safety of employees.(b) Unreasonable work assignments or conditions.(c) Discriminatory supervisory practices except insofar as such practices as alleged [*3]would constitute violations of law. With respect to claims alleging such practices as would constitute violations of law, they shall, at the election of the employee, be subject to review in accordance with State and Federal procedures established for such purpose as well as such internal review procedures as may exist, but shall not be subject to review under the provisions of this Article. Use of the internal review procedure shall not deny the employee access to State and Federal procedures; provided, however, that an employee electing pursuit of a claim in accordance with State and/or Federal procedures shall not be allowed to utilize the Unified Court System's Internal Discrimination Claim Procedure.Under the CBA, contract grievances are subject to a three-step review process, which results in binding arbitration. The CBA provides under section 18.3:
(a) Step 1. The employee or the Union shall present the grievance in writing to the District Administrative Judge or his/her designee, with a copy to the employee's immediate supervisor in the court or court-related agency to which the employee is assigned, not later than 45 calendar days after the date on which the act or omission giving rise to the grievance occurred or when the employee could reasonably have been expected to become aware of, or to have knowledge, that he/she had a grievance ... The District Administrative Judge or his/her designee shall take any other steps necessary to ensure that a proper disposition of the grievance is made and shall reply to the employee or Union within 15 workdays following the date of submission. In the event a grievance is not answered within the prescribed time limit, the grievance will be considered to have been passed to the second step of the grievance procedure.(b)(1) Step 2. Contract Grievances. In the event the employee or the Union wishes to appeal an unsatisfactory contract grievance decision at Step 1, the appeal must be presented in writing within 15 days of the receipt of the Step 1 decision, to the Deputy Director for Labor Relations. A copy of such appeal shall also be sent to the District Administrative Judge or his/her designee who passed upon the grievance at Step 1 In the event a grievance is not answered within the prescribed time limit, the Union may demand in writing to the Deputy Director for Labor Relations to move the grievance to the next step of the procedure(c) Step 3. Contract Grievances.(1) An appeal to arbitration from an unsatisfactory contract grievance decision at Step 2 may be made by the Union within 20 days of the receipt of the decision by the Deputy Director for Labor Relations. A request for arbitration may be initiated by the Union serving upon the Deputy Director for Labor Relations a notice in writing of an intent to proceed to arbitration. The notice shall identify the Agreement provision in dispute, the issue or issues to be determined, the department and the employee or employees involved. Upon receipt of a notice requesting arbitration, the parties shall select an arbitrator from a central panel. Such panel shall be agreed upon as soon as practicable following execution of this Agreement. The method of selecting the arbitrator for a particular case shall be by mutual agreement between both parties to the Agreement, and failing such agreement, by mutual strike from the central panel . . .As set forth in 18.3(b)(2), a decision issued by the Deputy Director for Labor Relations [*4]following an appeal of a non-contract grievance decision at Step 1 "shall not be subject to review by arbitration" (CBA, § 18.3[b][2]). 
The CBA further provides that "[i]n the event the Union appeals a Step 1 decision to Step 2 and the parties cannot agree as to whether it constitutes a contract or non-contract grievance, the issue of arbitrability shall be preliminarily submitted to arbitration prior to the resolution of the dispute on the merits in accordance with the procedures for arbitration set forth in Step 3" (CBA, § 18.8).
The Petition
By notice of petition and petition dated August 19, 2024, the UCS moved pursuant to CPLR 7503(b) for a stay of arbitration. The UCS argues, among other things, that "[t]here is no agreement in the CBA to arbitrate the UCS's authority or that of the CAJ, FDCAJ, or DCAJ to regulate the conduct of—and discipline for misconduct—the UCS's employees via the filing and prosecution of disciplinary charges" (Petition, ¶ 48; see Memorandum of Law pp 7-8). The UCS further argues, in any event, "enforcing any such agreement (which does not exist) would violate the public policy of UCS to administer the work and conduct of its nonjudicial employees" (id.). The UCS emphasizes that "[a]rbitration of this matter would infringe upon UCS's constitutional, statutory, and regulatory authority to supervise the administration and operation of the UCS which entails the implementation of personnel practices needed to establish and oversee its nonjudicial workforce, including through the use of disciplinary proceedings when necessary" (id. at ¶ 50; see Memorandum of Law pp 8-10). The UCS argues that the grievance, as a matter of public policy, should not be arbitrated, and the issues raised by the respondents can only be challenged in a proceeding pursuant to CPLR article 78. The UCS also contends that only contract grievances are arbitrable and "the crux of COBANC's claims concerning the delegation of authority by the CAJ to the FDCAJ and DCAJs and the exercise of this authority does not entail an application, interpretation, or violation of the CBA" (id. at ¶ 62; see Memorandum of Law pp 10-13).
Opposition
In opposition, the respondents argue that "[t]he terms in Art 16 do not provide that anyone other than the DCAJ ONYC may engage in the implementation, administration and enforcement of the disciplinary procedure" and "does not state that the [FDCAJ], or the DCAJ Outside NYC-10JD can perform this function, and in fact the term 10JD appears nowhere in Art 16" (Opposition ¶ 7). They contend that Piciulo never received a copy of the Administrative Order issued on December 21, 2023, designating Judge St. George as FDCAJ and DCAJ ONYC in the Tenth Judicial District.
The respondents note that the instant grievance was filed six days after COBANC member, Steven Moucatel, received a letter and report of determination from Judge St. George related to a disciplinary investigation. They emphasize that on February 14, 2024, the Director of Labor Relations, Carolyn Grimaldi, sent an email to, among others, Piciulo, attaching Administrative Order dated June 2, 2023, "appointing [Judge St. George] to oversee all matters in the 10th Judicial District with all authority under the CBA reserved to the Deputy Chief Administrative Judge" (Opposition, Ex. 4). Grimaldi also provided an updated organizational [*5]chart identifying the role of a DCAJ ONYC for the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Judicial Districts and noting that the role of DCAJ ONYC for the Tenth Judicial District (Nassau and Suffolk) is "[s]upervised by the [FDCAJ]" (Opposition, Ex. 5). According to the respondents, the UCS violated its terms "through the implementation[,] administration and enforcement of the disciplinary process by a person without the authority to do so" (Opposition ¶ 27). The respondents argue that under the CBA, the issue of arbitrability must be preliminarily submitted to arbitration and the "UCS improperly seeks herein to have this Court intervene and decide . . . the very issue it clearly agreed to have an arbitrator decide" (Opposition ¶ 25). They contend that the issue of whether Judge St. George has the authority under the CBA to oversee the disciplinary process "raises a clear question of contract interpretation" (Opposition ¶ 27). 
The respondents argue that this Court should reject the UCS's argument that the grievance is not arbitrable on public policy grounds. They insist that the grievance does not challenge the authority of the UCS to enforce employee conduct. Rather, the respondents contend that "[t]he grievance simply addresses the fact that UCS has unilaterally changed the terms of the contract to permit a person other than the bargained for designee to manage that process" (Opposition, Point I at p 14). They emphasize that they are "simply requesting that the UCS comply with the terms of the contract by having the DCAJ ONYC handle disciplinary matters" (Opposition, Point I at p 16). The respondents also argue that the grievance unequivocally involves an issue of contract interpretation and, in any event, the arbitrator — not the Court — must determine whether the grievance is a contract or non-contract matter under the CBA. They further note that the UCS conceded that it did not consult or meet with the Union as provided in section 16.9 of the CBA before establishing a panel to act as hearing officers.
Reply
In reply, the UCS reiterates that "public policy prohibits arbitration of a matter within its sovereignty, authority, and discretion" and the grievance is not arbitrable "because it pertains to employee discipline, which is specifically excluded from arbitration in Article 16" (Reply Memorandum p 1). The UCS asserts that respondents' attempt to reframe the issue as a matter of contractual interpretation should be rejected. The UCS further argues that the "authority and discretion to implement and enforce employee discipline has been and remains with a DCAJ, just not the specific DCAJ that Respondents prefer" (id. at p 3).
By decision and order dated May 22, 2025, the respondents' motion to change the venue of this proceeding from New York County to Nassau County was granted. The proceeding was subsequently reassigned to this Court after several judges recused.
Analysis
"'Public policy in New York favors arbitral resolution of public sector labor disputes'" (Matter of City of New Rochelle v Uniformed Fire Fighters Assn., Inc., Local 273, I.A.F.F., 206 AD3d 727, 728 [2d Dept 2022], quoting Matter of County of Nassau v Detectives Assn., Inc. of the Police Dept of Nassau County, 188 AD3d 1049, 1050 [2d Dept 2020]). "'However, a dispute between a public sector employer and an employee is only arbitrable if it satisfies a two-prong test'" (Matter of City of Yonkers v Yonkers Fire Fighters, Local 628, IAFF, AFL—CIO, 167 AD3d 599, 600 [2d Dept 2018], quoting Matter of City of Yonkers v Yonkers Fire Fighters, [*6]Local 628, IAFF, AFL—CIO, 153 AD3d 617, 617—618 [2d Dept 2017]). "In determining whether a grievance is arbitrable, a court must first ask whether there is any statutory, constitutional or public policy prohibition against arbitration of the grievance, and if there is no prohibition against arbitration, the court must then examine the [collective bargaining agreement] to determine if the parties have agreed to arbitrate the dispute at issue" (Town of Greenburgh v Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, Westchester County Local 860, Town of Greenburgh Unit, 244 AD3d 734, 735 [2d Dept 2025] [internal quotation marks omitted]; see City of New York v Uniformed Fire Officers Ass'n, Local 854, IAFF, AFL-CIO, 95 NY2d 273 [2000]; Village of Walden v Village of Walden Police Benevolent Association, Inc., 210 AD3d 990, 992 [2d Dept 2022]).
"Judicial restraint under the public policy exception is particularly appropriate in arbitrations pursuant to public employment collective bargaining agreements" (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 7 [2002]). However, "[p]reemptive judicial intervention in the arbitration process is warranted where the arbitrator [cannot] grant any relief without violating public policy" (Enlarged City School Dist. of Middletown New York v Civil Service Employees Ass'n, Inc., 148 AD3d 1146, 1148 [2d Dept 2017]).
Although "the scope of the public policy exception to an arbitrator's power to resolve disputes is extremely narrow" (United Federation of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of New York, 1 NY3d 72, 80 [2003]), the Court concludes that public policy prohibits arbitration of so much of the respondents' grievance as alleged that the UCS violated the CBA when Judge St. George made disciplinary charges against COBANC members, designated hearing officers for the determination of disciplinary charges, and exercised jurisdiction over COBANC members for disciplinary purposes.
Contrary to the respondents' contention, while the basis for the grievance in Matter of County of Broome v New York State Law Enforcement Officers Union, 80 AD3d 1047, 1049 [3d Dept 2011], differs from the subject grievance, the rationale set forth in that decision is nevertheless instructive. In that case, the respondent filed a grievance alleging that the petitioner violated the parties' CBA by reassigning a correction officer pursuant to a directive from the Administrative Judge for the Sixth Judicial District without utilizing the negotiated disciplinary procedures. In determining that public policy prohibits arbitration of the grievance, the Third Department stated that "[t]he public policy implicated here derives from the courts' inherent authority to maintain the integrity of the judicial process, manage their judicial functions, and guard their independence" (id. at 1049). The Court underscored that reinstatement of the officer to his former duties by an arbitrator "would encroach upon the authority of judges to manage their courtrooms" and "would frustrate the orderly administration of justice" (id.).
The public policy implicated in this case similarly derives from the UCS's inherent responsibility "to assign and regulate administrative authority in a complex, multi-tiered court system" (22 NYCRR 1.0). The CAJ is tasked with supervising "the administration and operation of the [UCS]" (22 NYCRR 80.1[a]), and, in the exercise of that delegated responsibility, "shall . . . designate deputies and administrative judges" and "may delegate to any deputy, administrative judge . . . any administrative power or function delegated to the [CAJ]" (22 NYCRR 80.1[b][4]). The Deputy Chief Administrators and Administrative Judges are "responsible generally for the orderly administration of the courts within the area of their administrative responsibility, as set forth in their orders of designation" (22 NYCRR 80.2[d]). [*7]The First Deputy Chief Administrator "shall supervise the administration and operation of the trial-level courts and management support functions of the [UCS]" and "may exercise and perform any of the powers and duties of the Chief Administrator" (22 NYCRR 82.1[b], [c]).
It is undisputed that the CAJ was acting within his authority when, on June 2, 2023, he confirmed the designation of Judge St. George as FDCAJ and delegated to him the responsibility of overseeing "all the Courts in the Tenth Judicial District-Nassau and Suffolk Counties" and "authority over all matters in the collective bargaining agreements that are otherwise reserved to the [DCAJ ONYC]" (see AO/160/2023). That designation was continued by Administrative Order dated December 21, 2023 (see AO/389/2023).
The only relief sought by the respondents in the grievance is for Judge St. George to "[c]ease and desist and reassign all current investigations and disciplinary matters involving COBANC members to James P. Murphy (Deputy Chief Administrative Judge Courts Outside New York City)" (NYSCEF Doc No. 6), who was designated as DCAJ Outside of NYC "to exercise the powers and perform the duties set forth in the Chief Judge's Administrative Delegation Number 2 (22 NYCRR 81.1), in the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Judicial Districts" (AO/389/2023). Granting that relief would arrogate to an arbitrator the power explicitly reserved for the CAJ and force Judge Murphy to exercise administrative responsibility over an area outside the orders of designation (cf. generally Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Bd. of Educ. of City School Dist. of City of New York, 1 NY3d 72, 81 [2003] [arbitration award did not violate public policy or impinge on school's responsibility to appoint a qualified candidate since it did not force the Board to hire an unqualified candidate, but instead found the selection process arbitrary and capricious])[FN1]
. Such an encroachment upon the authority of the UCS and the CAJ is, in this Court's view, contrary to public policy (see Matter of County of Broome v New York State Law Enforcement Officers Union, 80 AD3d at 1049-1050).
The respondents' position at oral argument was that "[t]here is no such person at this point" authorized to oversee discipline under Article 16 because under the CBA, that responsibility was given to the title of DCAJ ONYC — a position originally held solely by Judge St. George (Transcript 12/19/25 at 11). The respondents contended that the UCS was required to "bargain with COBANC" on that issue because of "this void of who should handle the disciplinary proceedings" (Transcript 12/19/25 at 13, 15).
Without considering "whether the claim with respect to which arbitration sought is tenable, or otherwise pass[ing] upon the merits of the dispute" (CPLR 7501; see Matter of Board of Educ. of Watertown City School Dist. (Watertown Educ. Assn.), 93 NY2d 132, 142 [1999]; Village of Maybrook v Teamsters Local 445, 222 AD3d 96 [2d Dept 2023]), respondents' position - taken to its logical conclusion - would require that all investigations and disciplinary proceedings involving COBANC members must come to a halt. Such a result would effectively paralyze the administration of justice, impede the UCS's ability to maintain order and address [*8]misconduct, and disrupt the orderly functioning of its disciplinary framework. In this Court's view, such an intrusion on the UCS's managerial responsibilities and sovereign authority compromises the day-to-day operation of the court system and runs afoul of strong public policy.
The Court rejects the respondents' suggestion that the application to permanently stay arbitration is premature, contending that the UCS "cannot preemptively assume an award will violate public policy" and should "permit the arbitrator to fashion an appropriate, legal, and binding award" (Opposition at p 16). For the reasons stated above, no remedy can be fashioned by the arbitrator without violating public policy (see Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO, 95 NY2d 273, 283 [2000]). 
Thus, the Court grants those branches of the petition which were to permanently stay so much of the grievance as alleged that the UCS violated the CBA when Judge St. George made disciplinary charges against COBANC members, designated hearing officers for the determination of disciplinary charges, and exercised jurisdiction over COBANC members for disciplinary purposes even though he was no longer the DCAJ Outside of NYC.
Conversely, the UCS has not proffered any statutory, constitutional, or public policy prohibition against arbitration of so much of the respondents' grievance as alleged that the UCS violated the CBA by failing to "consult with COBANC to establish a panel of qualified persons who may be designated to conduct disciplinary hearings" (NYSCEF Doc No 6). Instead, the UCS asserted in its petition that, "[t]o the extent COBANC wishes to exercise its right to advise on the establishment of a panel of hearing officers, its remedy is to seek a meeting with UCS and, if UCS refuses, commence a grievance based on UCS's refusal. Any remedy would be limited to directing UCS to hold such a meeting" (Verified Petition, ¶ 36). Section 16.9 of the CBA provides, inter alia, that the UCS and COBANC "shall meet in a Labor/Management Subcommittee to discuss the establishment by the [UCS] of a panel to act as Hearing Officers on charges made against officers or employees" and "[t]he Subcommittee shall discuss and make recommendations concerning the composition of, and selection from, a fixed panel of persons who are qualified to act as Hearing Officers and from whom the State selects one or more persons to hear employee appeals of disciplinary charges" (CBA, § 16.9). In the Step 2 determination, the UCS indicated that on January 2, 2024, COBANC was provided with a copy of the panel of hearing officers.
At this juncture, in connection with an application to stay arbitration, the Court is not tasked with passing upon the merits of the dispute, determining whether a dispute is a "contract" or "non-contract" grievance — an issue that must be preliminarily submitted to arbitration under the CBA — or considering what relief, if any, would be appropriate for an alleged violation of section 16.9 (see CPLR § 7501). Furthermore, the UCS does not contend that no reasonable relationship exists between the subject matter of this particular dispute and the general subject matter of the CBA (see e.g. City of Yonkers v Yonkers Fire Fighters, Local 628, IAFF, AFL-CIO, 187 AD3d 900 [2d Dept 2020], affd 39 NY3d 114 [2022]; In re City of Johnstown (Johnstown Police Benevolent Ass'n), 99 NY2d 273, 279 [2002]). Accordingly, that branch of the petition which was to permanently stay so much of the grievance as alleged that the UCS violated the CBA by failing to consult with COBANC to establish a panel of qualified persons who may be designated to conduct disciplinary hearings is denied.
The parties' remaining contentions are either without merit or need not be reached in light of the Court's determinations.
Accordingly, it is hereby,
ORDERED that those branches of the petition which were to permanently stay so much of the grievance as alleged that the UCS violated the CBA when Judge St. George made disciplinary charges against COBANC members, designated hearing officers for the determination of disciplinary charges, and exercised jurisdiction over COBANC members for disciplinary purposes even though he was no longer the DCAJ Outside of NYC are granted; and it is further,
ORDERED that the branch of the petition which was to permanently stay so much of the grievance as alleged that the UCS violated the CBA by failing to consult with COBANC to establish a panel of qualified persons who may be designated to conduct disciplinary hearings is denied; and it is further,
ORDERED that all other relief requested and not decided herein is denied.
The foregoing constitutes the Decision and Order of this Court.
Dated: March 24, 2026White Plains, NYENTER,HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:The Court in no manner states, suggests, or implies that Judge Murphy is in any way unqualified to handle the administrative responsibilities at issue. Rather, the question is whether any public policy prohibits arbitration of the grievance where the relief sought would require the arbitrator to usurp authority expressly reserved for the CAJ to force a specific jurist, such as Judge Murphy, to undertake responsibilities over an area outside the orders of designation.