[869 NE2d 1, 838 NYS2d 1]

In the Matter of COUNTY OF CHAUTAUQUA, Appellant, v CIVIL SERVICE EMPLOYEES ASSOCIATION, LOCAL 1000, AFSCME, AFL-CIO, COUNTY OF CHAUTAUQUA UNIT 6300, CHAUTAUQUA COUNTY LOCAL 807, et al., Respondents.

Argued March 22, 2007; decided May 1, 2007

**POINTS OF COUNSEL**

*Jaeckle Fleishmann & Mugel, LLP,* Buffalo (*Sean P. Beiter, Scott P. Horton* and *Matthew C. Van Vessem* of counsel), for appellant. A stay of arbitration is appropriate in this matter. (*Matter of Blackburne [Governor's Off. of Empl. Relations],* 87 NY2d 660; *Matter of Committee of Interns & Residents [Dinkins],* 86 NY2d 478; *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509; *Matter of McDermott v New York State Off. of Mental Health,* 195 AD2d 932, 82 NY2d 660; *Matter of Piekielniak v Axelrod,* 92 AD2d 968, 59 NY2d 603; *Matter of Barnes [Council 82, AFSCME (Monroe)],* 261 AD2d 803, 94 NY2d 719; *Matter of Civil Serv. Empls. Assn., Westchester Ch., Local 860 v Town of Harrison,* 48 NY2d 66; *Pollock v Crosson,* 153 Misc 2d 419, 203 AD2d 466; *Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.],* 90 NY2d 364; *Matter of Christian v Casey,* 76 AD2d 835.)

*Fessenden, Laumer & DeAngelo,* Jamestown (*Charles S. DeAngelo* of counsel), for respondents. I. The Fourth Department's decision appropriately reflects the strong public policy in favor of arbitration of labor disputes. (*Matter of City of Plattsburgh [Local 788 & N.Y. Council 66, Am. Fedn. of State, County & Mun. Empls., AFL-CIO],* 108 AD2d 1045; *Board of Educ. of City of N.Y. v Glaubman,* 53 NY2d 781; *Matter of Alden Cent. School Dist. v Watson,* 56 AD2d 713; *Matter of Committee of Interns & Residents [Dinkins],* 86 NY2d 478; *Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.],* 90 NY2d 364; *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411; *Matter of Silverman [Benmor Coats],* 61 NY2d 299; *Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.],* 93 NY2d 132.) II. An arbitrator can issue an award consistent with the collective bargaining agreement and Civil Service Law; therefore, it is not appropriate to preclude arbitration. (*Matter of New York City Dept. of Sanitation v MacDonald,* 87 NY2d 650; *Matter of City of Plattsburgh [Local 788 & N.Y. Council 66, Am. Fedn. of State, County & Mun. Empls., AFL-CIO],* 108 AD2d 1045; *Matter of Apuzzo v County of Ulster,* 98 AD2d 869, 62 NY2d 960; *Matter of Blackburne [Governor's Off. of Empl. Relations],* 87 NY2d 660.) III. The Supreme Court erred when it determined that the Third Department's decision in *Matter of City of Plattsburgh (Local 788 & N.Y. Council 66, Am. Fedn. of State, County & Mun. Empls., AFL-CIO)* (108 AD2d 1045 [1985]) reflected the current status of the law. (*Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO,* 99 NY2d 1; *Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.],* 90 NY2d 364; *Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.],* 93 NY2d 132; *Matter of Committee of Interns & Residents [Dinkins],* 86 NY2d 478; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.],* 99 NY2d 273; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.,* 1 NY3d 72; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Piro v Bowen,* 76 AD2d 392, 52 NY2d 702; *Matter of Niagara Wheatfield Adm'rs Assn. [Niagara Wheatfield Cent. School Dist.],* 44 NY2d 68.) IV. The collective bargaining agreement language, providing that grievances concerning interpretation, application or enforcement of the

agreement, existing laws and rules are to be submitted to arbitration except where "otherwise reviewable pursuant to law" does not preclude arbitration of the subject dispute. (*Board of Educ. of City of N.Y. v Glaubman,* 53 NY2d 781; *Board of Educ. of Yonkers City School Dist. v Cassidy,* 59 AD2d 180; *Matter of County of Steuben [Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO],* 292 AD2d 810, 98 NY2d 606.)

### OPINION OF THE COURT

JONES, J.

In this appeal, the Civil Service Employees Association (CSEA) seeks arbitration of grievances concerning layoffs and rights of displacement contained in its collective bargaining agreement (CBA) with the County of Chautauqua. The issue before us is whether the grievances are arbitrable.

## Facts and Procedural History

In December 2003, County officials determined that it was necessary to lay off employees for reasons of economy. The County, however, perceived a conflict between section 14.05 of the CBA and Civil Service Law § 80 concerning reductions in force of competitive class civil service positions. Section 14.05 of the CBA provides, in part, that "[a]ll layoffs shall be pursuant" to the following:

> "(a) For layoff purposes, an employee's *seniority shall determine the order to be followed.* In a department, the employee with the least seniority shall be the first to be laid off until the total number of employees required to decrease forces shall be reached. When all displacement possibilities are exhausted within the department, the employee shall have *the right to displace in other departments*" (emphasis added).

Civil Service Law § 80 (1), entitled "Suspension or demotion," in turn, dictates how a public employer must reduce competitive class civil service positions. It provides, in part:

> "*Where, because of economy, consolidation or abolition of functions, curtailment of activities or otherwise, positions in the competitive class are abolished* or reduced in rank or salary grade, *suspension or demotion,* as the case may be, *among incumbents holding the same or similar positions shall be made*

*in the inverse order of original appointment* on a permanent basis in the classified service in the service of the governmental jurisdiction in which such abolition or reduction of positions occurs" (emphasis added).

Further, section 80 (4) provides, in part that: "Upon the abolition or reduction of positions in the service of a civil division, suspension or demotion shall be made from among employees holding the same or similar positions *in the entire department or agency within which such abolition or reduction of positions occurs*" (emphasis added).

Accordingly, the County solicited advice from the Department of Civil Service concerning its view of the conflict between the statute and the CBA—specifically, that the CBA required that layoffs be made solely on the basis of seniority, irrespective of position or title, whereas section 80 mandates that layoffs be made by seniority within a position. In response, the Department advised the County that a collective bargaining agreement "may not alter the layoff units prescribed by section 80 (4)."

After sharing the Department's opinion with CSEA, the County proceeded to lay off approximately 30 employees, which CSEA grieved. CSEA alleged, among other things, that the County violated section 14.05 of the CBA by refusing to (1) lay off "the employees with the least seniority within a department until the total number of employees required to decrease forces in that Department was reached" and (2) allow "employees to displace employees in other departments after they exhausted displacement rights in their own departments." The County objected to the arbitrability of these issues. After an unfavorable determination at a Step Three grievance hearing, CSEA served upon the County a notice of intent to arbitrate. The County then commenced this CPLR article 75 proceeding seeking a permanent stay of arbitration as to all issues. CSEA opposed the petition and cross-moved to compel arbitration.

The County asserted—and presses here—two issues that it deems repugnant to public policy as embodied in Civil Service Law § 80. It argues that CBA § 14.05 violates public policy because, whereas section 80 (1) allows for layoffs by seniority within a job title or position, the CBA mandates that layoffs occur only by seniority. According to the County, the CBA inescapably forces it "to lay off every other less senior employee in the layoff unit (and eliminate essential positions) before it could ever eliminate the non-essential position." The County also as-

serts that another clause of the same CBA provision violates Civil Service Law § 80 (4) by permitting interdepartmental displacements, or "bumping."

Supreme Court granted, in part, the County's petition to stay arbitration and denied, in part, CSEA's cross motion. The court agreed with the County that a conflict existed between Civil Service Law § 80 (4) and CBA § 14.05. Relying on *Matter of City of Plattsburgh (Local 788 & N.Y. Council 66, Am. Fedn. of State, County & Mun. Empls., AFL-CIO)* (108 AD2d 1045 [3d Dept 1985]), the court held that such a conflict was for a court, not an arbitrator, to resolve. Accordingly, it granted the County's petition, in part, and stayed arbitration to the extent that CSEA's demands concerned claims or rights on behalf of employees who were in "the Competitive Classification under the Civil Service Law." The court, however, concluded that because section 80 (4) did not apply to noncompetitive or labor class employees, arbitration was permissible as to them and granted CSEA's cross motion to that extent.

On an appeal to the Appellate Division from so much of the order as stayed arbitration, that court unanimously reversed and granted CSEA's cross motion to compel arbitration in its entirety (26 AD3d 843 [2006]). Acknowledging the conflict between the parties' contract and the Civil Service Law, the court nonetheless held that such a conflict was "merely theoretical" (*id.* at 844). The court concluded that the entire dispute was arbitrable because the statute did not contain " 'clear exclusionary language' " that precluded arbitration (*id.*, quoting *Matter of Alden Cent. School Dist. v Watson*, 56 AD2d 713, 714 [4th Dept 1977]). We disagree and now modify the Appellate Division's order.

## Discussion

■■ The Taylor Law empowers and, in fact, requires a public employer to bargain with employee organizations and to enter written agreements governing the terms and conditions of employment (*see* Civil Service Law § 204 [1], [2]; *see also Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.]*, 90 NY2d 364, 372 [1997]). An employer has wide latitude to negotiate such terms and can agree to submit disputes to arbitration subject, however, to "the absence of 'plain and clear' prohibitions in statute or controlling decision[al] law, or restrictive public policy" (*Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d 268, 273

[1976] [citations omitted]). Thus, although the Taylor Law reflects this State's "strong" policy favoring arbitration, this principle is not without limits (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563, 575 [2006]; *see Matter of New York City Dept. of Sanitation v MacDonald*, 87 NY2d 650, 656 [1996]; *Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist*, 38 NY2d 137, 143 [1975]).

The threshold determination of whether a dispute is arbitrable is well settled. Proceeding with a two-part test, we first ask whether the parties may arbitrate the dispute by inquiring if "there is any statutory, constitutional or public policy prohibition against arbitration of the grievance" (*Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 278 [2002]). If no prohibition exists, we then ask whether the parties in fact agreed to arbitrate the particular dispute by examining their collective bargaining agreement. If there is a prohibition, our inquiry ends and an arbitrator cannot act (*see Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 80 [2003]; *Matter of Blackburne [Governor's Off. of Empl. Relations]*, 87 NY2d 660, 665 [1996]).

A dispute is, thus, nonarbitrable, if a court can conclude " 'without engaging in any extended factfinding or legal analysis' " that a law " 'prohibit[s], in an absolute sense, [the] particular matters [to be] decided' " by arbitration (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 8-9 [2002], quoting *Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631 [1979]; *see Matter of United Fedn. of Teachers*, 1 NY3d at 80). Put differently, a court must stay arbitration where it can conclude, upon examining the parties' contract and the implicated statute on their face, "that the granting of *any* relief would violate public policy" (*Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273, 284 [2000]; *see Matter of Blackburne*, 87 NY2d at 665; *Matter of Committee of Interns & Residents [Dinkins]*, 86 NY2d 478, 484 [1995]; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 668 [1990]; *Matter of Sprinzen [Nomberg]*, 46 NY2d at 631; *cf. Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 45 NY2d 411, 418 [1978]).

■ Addressing CSEA's first grievance regarding layoffs, the County asserts that section 14.05 of the CBA impermissibly

modifies an essential public policy embodied in Civil Service Law § 80. The County argues that

> "[s]ection 80 *first* requires municipalities to decide which titles are essential and *then* protects the senior employees in such titles. The CBA provision, however, represents an impermissible intrusion on this statutory scheme, by protecting specific persons, rather than necessary positions, regardless of the municipality's operational needs or the community's service needs" (Petitioner's Brief at 16).

We agree.

In *Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.* (49 NY2d 732 [1980]), we addressed a similar conflict. In that case, at issue was a job security provision in the parties' contract that required layoffs of those employees with the least seniority in the school district. Education Law § 2510 (2), however, directed that "the services of the teacher having the least seniority in the system *within the tenure of the position abolished* shall be discontinued" (emphasis added). We concluded that the statutory imperative of section 2510 (2) was "to maintain teaching proficiency which would otherwise be denigrated if, for example, the abolition of three vocational training positions required the dismissal of three teachers of romance languages, or vice versa, simply because they happened to have been the last three persons employed" (*Honeoye Falls-Lima*, 49 NY2d at 733). The school board, we held, could not surrender through collective bargaining "a responsibility vested in the board"—namely, the maintenance of adequate classroom standards (*id.* at 734).

Our holding in *Matter of Civil Serv. Empls. Assn., Westchester Ch., Local 860 v Town of Harrison* (48 NY2d 66 [1979]) is also instructive. In that case, the town—for reasons of economy and efficiency—abolished an engineering position and terminated the employee who occupied that position. Simultaneously, the town consolidated the duties left vacant by the abolition within a similar, remaining position. The union sought arbitration under a CBA provision that required it to be notified when a new job title or opening was created, and to offer that position to a senior qualified employee. We held, however, that Civil Service Law § 22 expressly dictated a procedure for creating new positions. Under section 22, the ultimate decision whether to create a new position rested with the town, subject to approval

and certification by the municipal civil service commission and was, thus, " 'beyond the power of the parties to alter or modify . . . by collective bargaining, agreement to arbitrate or otherwise' " (*id.* at 74, quoting *Nyquist*, 38 NY2d at 144).

At oral argument here, CSEA conceded—as it must—that under the CBA, the County would retain no power to decide which positions to eliminate. Contrary to CSEA's contention, however, the County could not cede the statutory imperative to render such decisions.

As in *Honeoye Falls-Lima*, "inescapably implicit" from a plain reading of section 80 (1) is that a public employer has a nondelegable discretion to determine—for reasons of economy, among others—what its staffing and budgetary needs are in order to effectively deliver uninterrupted services to the public (*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774, 778 [1976]; *see Board of Educ., Great Neck Union Free School Dist. v Areman*, 41 NY2d 527, 532-533 [1977]). We reiterate the obvious: in the absence of bad faith, fraud or collusion, the discretion identified here "is an undisputed management prerogative" for the public's benefit, and cannot be altered or modified by agreement or otherwise (*Matter of Saur v Director of Creedmoor Psychiatric Ctr.*, 41 NY2d 1023, 1024 [1977]; *see Matter of Piekielniak v Axelrod*, 92 AD2d 968, 969 [3d Dept 1983], *lv denied* 59 NY2d 603 [1983]). Once such an informed decision is made, section 80 (1) obligates the employer to respect the seniority rights of its employees. Succinctly put, under the CBA, seniority controls the abolition of positions; under the statute, seniority controls *only after* the employer decides which positions will be affected. This conflict is plainly irreconcilable.

Turning to CSEA's grievance regarding displacement rights, the County argues that under Civil Service Law § 80 (4), employees can only displace less senior employees within the affected department, and that section 80 (4) does not permit interdepartmental bumping. The nonarbitrability of this issue, however, is less clear.

Civil Service Law § 80 (4) provides that "[u]pon the abolition or reduction of positions . . . , suspension or demotion shall be made from among employees holding the same or similar positions in the entire department or agency within which such abolition or reduction of positions occurs."

No explicit language in section 80 (4) can be read to prohibit, in an absolute sense, a public employer from agreeing to

permit employees to "bump" less senior employees in another department or division within the same layoff unit. Nor can we find any implicit public policy reason that precludes such an agreement (*see Matter of Saur*, 41 NY2d at 1024). To be sure, CSEA's claim to interdepartmental displacement rights may be viable only to the extent that the second department or agency comes within the same layoff unit as the originating department or agency (*see* Civil Service Law § 80 [6]). In such a case, it is true that an arbitral award that would permit interdepartmental bumping into a *different* layoff unit would run afoul of the Civil Service Law. However, such an award is not inevitable. Thus, it is sufficient that an arbitrator, fashioning an award under the CBA, could comply with the statute (*see Matter of Commitee of Interns & Residents*, 86 NY2d at 484; *New York State Pub. Empl. Relations Bd.*, 75 NY2d at 668; *Matter of Port Washington Union Free School Dist.*, 45 NY2d at 417).

■■ In sum, because public policy precludes arbitration of CSEA's primary grievance as to the layoff of certain employees, the County's petition to stay arbitration is granted, in part. However, because no clear public policy precludes arbitration of CSEA's secondary grievance concerning displacement rights, CSEA's cross motion to compel arbitration is granted to that extent.

Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with this Opinion and, as so modified, affirmed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and SMITH concur; Judge PIGOTT taking no part.

Order modified, etc.