■ In the Matter of the Arbitration between NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES et al., Appellants, and LAUREN LANTERMAN et al., Respondents. [879 NYS2d 247]—

Kavanagh, J. Appeal from an order of the Supreme Court (Egan, Jr., J.), entered November 30, 2007 in Albany County, which, among other things, denied petitioners' application pursuant to CPLR 7503 to stay arbitration between the parties.

Respondent Lauren Lanterman held a position of Teacher II with petitioner Office of Children and Family Services (hereinafter OCFS) and was a member of the New York State Public Employees Federation (hereinafter PEF). PEF was a party to a collective bargaining agreement (hereinafter CBA) with the state. As an employee of OCFS in a Teacher II position, the State Education Department (hereinafter SED) requires that teachers who provide educational services and programs to children in OCFS facilities have appropriate professional certification (see Education Law § 112 [1]; § 3001; 8 NYCRR 116.3 [b]). Lanterman lost her certification on August 31, 2006 and was informed that her failure to reestablish same by November 30, 2006 would result in her termination. When she was unable to obtain her certification, she was terminated. Believing that the CBA entitled Lanterman to arbitrate the applicability of the disciplinary process under the CBA to her termination for failure to maintain her teaching certification—a minimum qualification for her position—Lanterman, represented by PEF, submitted a contract grievance to her employer pursuant to article 34 of the CBA[1] and asserted that her termination was in violation of articles 33[2] and 39[3] of the CBA. When OCFS, and subsequently petitioner Governor's Office of Employee Relations, took the position that the CBA's grievance process was

1. Article 34 defines a contract grievance as "a dispute concerning the interpretation, application or claimed violation of a specific term or provision of [the] [a]greement." That article also establishes a process for the resolution of contract grievances, which culminates in arbitration.

2. Article 33 is entitled "Discipline." It is expressly acknowledged to be in lieu of Civil Service Law § 75 and provides a "procedure for the imposition of discipline for just cause." It also sets forth a grievance process that, if necessary, concludes with arbitration.

3. Article 39 is entitled "Clinical Privileges and Credentialing." It provides that "[n]o plan for 'clinical privileging' or 'credentialing' established by any department, agency or institution shall contain any provision that conflicts with any [a]rticle or [s]ection of this [a]greement." Respondents contend that article 39 is applicable because OCFS used credentialing in a manner that violates article 33.

not applicable to Lanterman's termination because her failure to maintain her teaching certification automatically disqualified her from retaining her employment, respondents served a notice of intention to arbitrate pursuant to CPLR 7503 (c). Petitioners then commenced this proceeding pursuant to CPLR 7503 seeking a permanent stay of arbitration and respondents cross-moved to compel arbitration. Supreme Court denied the petition to permanently stay arbitration and granted respondents' cross motion to compel arbitration, prompting this appeal by petitioners.

We reverse. Initially, we disagree with respondents' contention that the CBA provides for the arbitration of any issue dealing with teacher certification, including what must occur if a teacher is not properly certified (*see Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 518 [2007]; *Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 137-138 [1999]; *Matter of City of Binghamton [Binghamton Firefighters, Local 729, AFL-CIO]*, 20 AD3d 859, 860 [2005]). We are also of the view that to allow the CBA to be used as respondents urge would serve to circumvent a state law that has a clear and well-defined public purpose—that being to require that teachers employed in our public school system are properly certified (*see Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273, 281-282 [2000]; *Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d at 138). As such, even if an agreement to arbitrate such a dispute did exist, it would constitute a substantial violation of public policy and, as such, would be unenforceable.

Without question, it is in the public interest and a matter of sound public policy that any individual who is employed as a teacher in the public school system be competent. To meet that need, the Legislature mandated that an individual, to be *eligible* for employment as a teacher in our public school system, must possess certain qualifications, including a teacher's certificate issued by SED or a diploma from a state teacher's college (*see* Education Law § 3001; 8 NYCRR 116.3 [b]; *see generally* 8 NYCRR part 80).[4] These qualifications are essential prerequisites that must be satisfied for one to qualify for employment as a teacher in the public school system, and certification, in particular, has been found to be a requirement that "as a matter of

---

4. Other mandated qualifications are that the individual be at least 18 years of age and a citizen.

law" must be met before an individual can be eligible for such employment (*Matter of Smith v Board of Educ. of Wallkill Cent. School Dist.*, 102 AD2d 655, 657 [1984], *affd* 65 NY2d 797 [1985]; *see* 8 NYCRR 116.3 [b]; part 80).

SED has a statutory obligation to "*establish and enforce* standards of instruction, personnel qualifications and other requirements for education services or programs" in New York and teacher certification is an integral part of that process (Education Law § 112 [1] [emphasis added]; *see* 8 NYCRR 80-1.1, 80-2.12). Given that certification of all teachers in the public school system is explicitly required by "a well-defined law," the public policy implications that flow from SED's role in this process are obvious and, for that reason, disqualification of an individual from a teaching position because they have not been able to gain proper certification is not subject to negotiation under the CBA (*Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 81 [2003]; *see Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.*, 49 NY2d 732, 734 [1980]; *see also Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d at 519; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d at 284).

We also find that provisions contained in the CBA do not establish that the parties intended to submit this issue to arbitration. While article 34 of the CBA provides for the arbitration of issues dealing with the discipline of teachers, whether a teacher has the statutorily required qualifications for the position is not a disciplinary matter subject to that provision. Instead, certification is a statutory prerequisite that an individual is required to have to qualify for a teaching position in the public school system; it has nothing to do with discipline and, as such, is not an issue that is subject to arbitration under this provision of the CBA (*see Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d at 519; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d at 282-283).

Certification, depending upon an individual teacher's specialty, involves an amalgam of requirements that have been established by SED in its regulations (*see* 8 NYCRR 116.3 [b]; part 80; *see also* Education Law § 3001). As a general rule, candidates for certification must have a baccalaureate degree and have successfully completed a certain level of college credits in pursuit of

a postgraduate degree (*see* 8 NYCRR 80-1.1 [b] [7]; *see also* 8 NYCRR 80-2.3, 80-2.4). They also must have actual teaching experience and pass an examination administered by SED. A provisional certificate of limited duration can be given by SED so that an individual can teach with supervision while working towards achieving full certification. However, the requirement for full certification can never be waived, and teachers employed pursuant to a provisional certification must obtain full certification within a definite period of time to remain qualified for their position. Certification is not, as the dissent suggests, a term or condition of employment governed by the CBA—it is a nonnegotiable requirement established by state law that must be met for an individual to hold a teaching position in a public school in this state.

Lanterman had been employed as a mathematics teacher in an OCFS facility since 1999 and, at the time of her termination, held that position pursuant to a provisional certification issued by SED.[5] Throughout her employment, Lanterman was repeatedly advised of the need to obtain certification so that she could continue her employment as a teacher with OCFS and was provided with numerous opportunities to do so. She took the certification exam on more than one occasion, was unable to achieve a passing grade and, in one instance, chose not to take the exam when it was offered. When the term of her provisional certification expired by law on August 31, 2006, she was given another opportunity to obtain certification; yet, once again, was unable to do so.[6]

No claim has been made in this proceeding that the process involved in obtaining certification is too onerous or unfair—or that, as designed, it does not aid SED in its efforts to insure that teachers in the public school system have achieved a minimum level of competence. In fact, respondents do not appear to take issue with the need for certification or that it is an integral part of SED's efforts to fulfill its statutory mandate to ensure that public school students receive a quality education. Instead, respondents—and our dissenting colleagues—argue that other options short of termination, "such as a suspension without pay or demotion to another open position for which a teaching certification was not required," should have been explored through

---

5. It appears, although it is not entirely clear from the record, that Lanterman was always employed by OCFS as a teacher on a provisional basis and did not achieve certification until after she was terminated from her position.

6. Lanterman also claimed, when she filed her first grievance regarding her termination, that she was terminated from her position while on maternity leave in violation of the Family and Medical Leave Act of 1993. She has not pursued that particular claim on this appeal.

arbitration before Lanterman was removed from her teaching position. Following this proposal to its logical conclusion, there are only two options available other than termination—either Lanterman would be continued in her teaching position, even though not properly certified, or placed in a nonteaching position within the OCFS facility.

First and foremost, allowing Lanterman to teach without proper certification would serve to completely ignore state law and applicable SED regulations which clearly and unequivocally require that all instructors at OCFS facilities be properly certified (see Education Law § 112 [1]; § 3001; 8 NYCRR 116.3 [b]). Even if employing a teacher without certification did not constitute such a clear violation of state law, it is a practice that, if repeated, would inevitably have an adverse impact on the quality of those individuals employed as teachers in the public school system. At the very minimum, it would necessarily result in individuals being employed as teachers who, for whatever reason, cannot obtain certification. If certification is, as SED maintains, a valid tool against which an individual's competence to teach can be measured, then it follows that individuals who obtain certification are likely to be more competent teachers than individuals who have not been so certified. By approving a process that would allow an arbitrator to place an individual in a teaching position who is not properly certified would not only serve to marginalize the entire certification process, but would promote a policy that is clearly not in the public interest.

As for the remaining option—the placement of Lanterman in a nonteaching position within an OCFS facility—it is not clear that such a position even exists or, if so, what position might qualify for such consideration (i.e., an administrative aide, secretary, lunch room aide, etc.). We also note that respondents do not appear to advance such an argument or contend that the CBA would permit placement of Lanterman in a nonteaching position. Moreover, there is nothing in the record that establishes that either the CBA or the Civil Service Law would authorize such a transfer.

As for the suggestion that Lanterman be suspended without pay, or, if "suspended," be retained in the position of a Teacher II (albeit without compensation), such action is nothing more than an extension of Lanterman's provisional certification status. SED regulations place a strict time limit during which an individual can teach with a provisional certification, and that period had clearly expired at the time of Lanterman's termination (see 8 NYCRR 80-1.6 [a], [c]). Simply stated, the net effect

of the options proposed as alternatives to termination not only are clear violations of state law, but, if implemented through arbitration, would result in a remedy that, despite the dissent's contention to the contrary, would serve to compromise our "public policy in favor of assuring the qualification of teachers."

In addition, Lanterman's failure to obtain certification and the decision to terminate her because she did not possess the qualifications required for her to be eligible for a teaching position are not matters "concerning the interpretation, application or claimed violation" of article 34 of the CBA. Instead, certification is a legal condition precedent that Lanterman was obligated to satisfy to be eligible to retain her position (*see Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498 [2004]). Her failure to obtain certification within the time allotted by state law served to automatically disqualify her from holding that position, and the decision to terminate her was based upon her failure to meet all of the eligibility requirements as mandated by state law and SED regulations. As such, that decision did not implicate any activity that would have otherwise involved provisions of the CBA and is, therefore, not subject to arbitration.

Finally, Lanterman claims that article 39 of the CBA, which applies to " 'credentialing' established by [other] department[s], agenc[ies] or institution[s]," requires arbitration. However, to the extent that such a provision can be interpreted as being at odds with state law and SED regulations requiring certification of teachers, it is against public policy and not enforceable (*see Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774, 777-778 [1976]).

Cardona, P.J., concurs.

Kane, J. (concurring). I agree with the portion of Justice Kavanagh's decision holding that arbitration should be stayed based upon public policy. Teacher certification is a nonnegotiable qualification for teaching positions—it cannot be bargained away in a collective bargaining agreement. Requiring a public entity to arbitrate regarding the termination of a teacher who failed to obtain or maintain statutorily-mandated teacher certification violates public policy. For that reason alone, I concur.

Stein, J. (dissenting). Because we are of the opinion that respondent Lauren Lanterman is entitled to arbitrate whether the disciplinary process under the collective bargaining agreement (hereinafter CBA) applies to her termination for failure to maintain her teaching certification, we respectfully dissent.

The Court of Appeals has articulated that "the public policy exception to an arbitrator's power to resolve disputes is

extremely narrow" (*Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 80 [2003]). Likewise, a stay of arbitration is an extreme remedy which should only be granted where there is no possibility that the arbitrator could fashion any remedy not in violation of public policy (*see Matter of Committee of Interns & Residents [Dinkins]*, 86 NY2d 478, 484 [1995]). Moreover, preemptive intervention—to prevent the possibility that a particular remedy might be imposed that would violate public policy—is improper (*see id.* at 484).

While it is unquestionably in the public interest to ensure the competence of teachers in the public school system, we disagree with the majority's conclusion that allowing an arbitrator to determine the remedy for Lanterman's failure to maintain the necessary certification for her position would constitute an improper delegation of the authority of the State Education Department (hereinafter SED) to establish and enforce the qualifications for teachers in facilities of petitioner Office of Children and Family Services (hereinafter OCFS) and of OCFS's duty to ensure that teachers are properly certified. We do not suggest that Lanterman—or any other employee—should be permitted to serve in a position for which she does not meet the minimum qualifications.[1] However, inasmuch as an arbitrator could, after considering all relevant factors, potentially fashion a remedy other than termination—including, as respondents suggest, a suspension without pay[2] or demotion to another open position for which a teaching certificate was not required or some other possible remedy—that would not violate either the CBA or the public policy in favor of assuring the qualification of teachers (*see Matter of State of N.Y., N.Y. State Dept. of Agric. & Mkts. [Public Empls. Fedn.]*, 277 AD2d 564, 566 [2000]; *see generally Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d at 81), the public policy exception should not apply.

Contrary to the implied concern of petitioners and the majority, permission to arbitrate would not *require* the arbitrator to impose an alternative remedy—it would only *permit* the arbitrator to do so if, under all the facts and circumstances, the arbitra-

---

**1.** Indeed, there is no question that Lanterman possessed the necessary provisional certification when she was hired or that, after her termination, she obtained her full certification.

**2.** Notably, Lanterman was on maternity leave from the date her certification expired to the date of her termination. Thus, she was not actively teaching during that time.

tor deemed it appropriate.[3] Nor would permission to arbitrate confer upon the arbitrator the authority to allow Lanterman to teach without proper certification or to fashion a remedy which would otherwise violate SED regulations or state law (*see generally Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d at 81). We are of the view that this is not a case where the granting of *any* relief would violate public policy (*cf. Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519, 521 [2007]; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273, 282-283 [2000]) and that the majority here simply overlooks the possibility that an alternative remedy exists which would not be violative of public policy, statutes or regulations. Thus, in our opinion, a stay of arbitration is an inappropriate exercise of preemptive intervention.

Turning next to the question of whether the parties agreed to arbitrate this particular dispute and bearing in mind the broad public policy in favor of arbitrating public sector employment disputes (*see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 7 [2002]), we must only ascertain "whether there is a reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA" (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 143 [1999]). Furthermore, as noted above, there is an important distinction between a determination regarding the merits of respondents' grievance and the threshold question of whether the authority to decide the merits resides with the court or with an arbitrator (*see* CPLR 7501). The sole issue for our determination herein is the latter, i.e., whether Supreme Court properly concluded that the issues raised in respondents' grievance are reviewable under the contract arbitration clause set forth in article 34 of the CBA.

---

**3.** The majority's suggestion that anything other than termination would be inappropriate begs the question of whether that determination should be made by the court or by an arbitrator. In fact, as the majority notes, it appears from the record that OCFS did not deem it to be a violation of public policy to give Lanterman at least one opportunity to obtain her certification after her provisional certification expired and to continue her employment for a period of time beyond such expiration. In our view, it is not for this Court to speculate, as the majority does, regarding whether another position exists for which Lanterman is qualified. The question before us—which we would answer in the affirmative—is simply whether an arbitrator should be permitted to determine when and if other remedies are no longer suitable and termination is appropriate.

In our view, the dispute here concerns the interpretation, application or a claimed violation of article 33 of the CBA—specifically, whether it applies to the termination of an employee for failure to maintain required certification—and unequivocally falls within the broad provisions of article 34. It is, therefore, the province of an arbitrator to determine whether article 33 was intended to "modify, supplement, or replace the more traditional forms of protection afforded public employees . . . in section[ ] 75 . . . of the Civil Service Law" (*Dye v New York City Tr. Auth.*, 88 AD2d 899, 899 [1982], *affd* 57 NY2d 917 [1982]) so as to encompass within the definition of "discipline" action taken against an employee due to the loss of required certification—thus, triggering the procedures of article 33 (*see Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d at 142-143).[4]

Inasmuch as we agree with Supreme Court's determination that no constitutional, statutory or public policy prohibition exists to arbitrating the issue of whether the disciplinary procedures set forth in article 33 of the CBA apply to Lanterman's termination for lack of appropriate certification and with the court's conclusion that such arbitration is authorized by the CBA, we would affirm.

Rose, J., concurs. Ordered that the order is reversed, on the law, without costs, petitioners' application to permanently stay arbitration granted, and respondents' cross application denied.

4. *Matter of Felix v New York City Dept. of Citywide Admin. Servs.* (3 NY3d 498 [2004]) is clearly distinguishable. In that case, there was no collective bargaining agreement. More importantly, it involved a statutory residency requirement—with which the subject employee admittedly failed to adhere—which explicitly provided for an automatic forfeiture of employment in the event the residency requirement was not met.