■ In the Matter of the Arbitration between NEW YORK STATE OFFICE OF ALCOHOLISM AND SUBSTANCE ABUSE SERVICES et al., Appellants, and VICTOR ORTIZ et al., Respondents. [878 NYS2d 522]—

---

Stein, J. Appeal from an order of the Supreme Court (Egan, Jr., J.), entered November 30, 2007 in Albany County, which, among other things, denied petitioners' application pursuant to CPLR 7503 to stay arbitration between the parties.

Respondent Victor Ortiz was employed for 18 years by petitioner New York State Office of Alcoholism and Substance Abuse Services (hereinafter OASAS). As an employee of OASAS, Ortiz was a member of the New York State Public Employees Federation, AFL-CIO (hereinafter PEF) which, in turn, was party to a collective bargaining agreement (hereinafter CBA) with the state. Pursuant to Mental Hygiene Law § 19.07 and regulations promulgated by OASAS (see 14 NYCRR part 853), counselors with OASAS are required to maintain proper credentialing in order to provide services to persons suffering from alcohol and substance abuse, chemical dependence or compulsive gambling.

Ortiz was terminated from his position as an Addictions Counselor II five days after the expiration of his certification as a Credentialed Alcoholism and Substance Abuse Counselor (hereinafter CASAC). In terminating Ortiz, OASAS admittedly did not comply with the disciplinary procedure set forth in the CBA. The question before us on this appeal is whether the CBA entitles Ortiz to arbitrate the applicability of the disciplinary procedures under the CBA to his termination for failure to maintain his CASAC certification—a statutory, minimum qualification for his position. Believing that OASAS's adherence to the CBA was required, Ortiz, represented by PEF, submitted a contract grievance to his employer pursuant to article 34 of the CBA,[1] asserting that his termination was in violation of articles 33[2] and 39[3] of the CBA. When OASAS, and subsequently

---

1. Article 34 defines a contract grievance as "a dispute concerning the interpretation, application or claimed violation of a specific term or provision of [the] [a]greement." That article also establishes a process for the resolution of contract grievances, which culminates in arbitration.

2. Article 33 is entitled "Discipline." It is expressly acknowledged to be in lieu of Civil Service Law § 75 and provides a "procedure for the imposition of discipline for just cause." It also sets forth a grievance process that, if necessary, concludes with arbitration.

3. Article 39 is entitled "Clinical Privileging and Credentialing." It provides that "[n]o plan for 'clinical privileging' or 'credentialing' established by any department, agency or institution shall contain any provision that conflicts with any [a]rticle or [s]ection of this [a]greement." Respondents contend that article 39 is applicable because CASAC credentialing, including renewal thereof, is administered by OASAS (see 14 NYCRR part 853). They also contend that OASAS intentionally delayed the renewal of Ortiz's CASAC

petitioner Governor's Office of Employee Relations, took the position that the CBA's grievance process was not applicable to Ortiz's termination because his failure to maintain CASAC status automatically disqualified him from retaining his employment, respondents served a notice of intention to arbitrate pursuant to CPLR 7503 (c). Petitioners then commenced this proceeding in Supreme Court seeking to permanently stay arbitration and respondents cross-moved to compel arbitration. Supreme Court dismissed the petition to stay arbitration and granted respondents' cross motion to compel, prompting this appeal by petitioners. We affirm.

Inasmuch as petitioners do not oppose arbitration on public policy grounds or assert any statutory or constitutional prohibition against such arbitration, our analysis is limited to whether the CBA contemplated arbitration as a means of resolving the instant dispute (*see Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519 [2007]; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 278 [2002]). We find that it did.

In determining whether the parties agreed to arbitrate this particular dispute and bearing in mind the broad public policy in favor of arbitrating public sector employment disputes (*see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 7 [2002]), we must only ascertain "whether there is a reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA" (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 143 [1999]). Furthermore, there is an important distinction between a determination regarding the merits of respondents' grievance and the threshold question of whether the authority to decide the merits resides with the court or with an arbitrator (*see* CPLR 7501). The sole issue for our determination herein is the latter, i.e., whether Supreme Court properly concluded that the issues raised in respondents' grievance are reviewable under the contract arbitration clause set forth in article 34 of the CBA.

In our view, inasmuch as the dispute here concerns the interpretation, application or a claimed violation of article 33 of the CBA—specifically, whether it applies to the termination of an employee for failure to maintain required certification—it unequivocally falls within the broad provisions of article 34. It is, therefore, the province of an arbitrator to determine whether

certification to avoid the disciplinary procedures set forth in article 33 of the CBA.

article 33 was intended to "modify, supplement, or replace the more traditional forms of protection afforded public employees . . . in section[ ] 75 . . . of the Civil Service Law" (*Dye v New York City Tr. Auth.*, 88 AD2d 899, 899 [1982], *affd* 57 NY2d 917 [1982]) so as to encompass within the definition of "discipline" action taken against an employee due to the loss of required certification—thus, triggering the procedures of article 33 (*see Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d at 142-143).[4]

Rose and Kane, JJ., concur.

Kavanagh, J. (dissenting). We dissent. While petitioners in this proceeding do not argue that arbitration of the issues is prohibited by public policy concerns, we conclude, for the same reasons as we did in *Matter of New York State Off. of Children & Family Servs. (Lanterman)* (62 AD3d 1109 [2009] [decided herewith]), that the parties did not agree, and for that matter could not have agreed, "to arbitrate the particular dispute" of respondent Victor Ortiz's lack of the statutorily required certification (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519 [2007]). Therefore, we would reverse Supreme Court's order and grant a permanent stay of arbitration.

Cardona, P.J., concurs. Ordered that the order is affirmed, without costs.

---

4. Petitioners' reliance on *Matter of Felix v New York City Dept. of Citywide Admin. Servs.* (3 NY3d 498 [2004]) is misplaced. In that case, there was no collective bargaining agreement. More importantly, it involved a statutory residency requirement—with which the subject employee admittedly failed to adhere—which explicitly provided for an automatic forfeiture of employment in the event the residency requirement was not met.