[892 NYS2d 614]

In the Matter of the Arbitration between NEW YORK STATE COR-
RECTIONAL OFFICERS AND POLICE BENEVOLENT ASSOCIATION,
INC., Appellant, and NEW YORK STATE DEPARTMENT OF CIVIL
SERVICE et al., Respondents.

Third Department, December 31, 2009

### APPEARANCES OF COUNSEL

*Sheehan, Greene, Carraway, Golderman & Jacques, L.L.P.*, Albany (*Lawrence H. Schaefer* of counsel), for appellant.

*Andrew M. Cuomo, Attorney General*, Albany (*Victor Paladino* of counsel), for New York State Department of Civil Service and another, respondents.

*Featherstonhaugh, Wiley & Clyne, L.L.P.*, Albany (*Stephen J. Wiley* of counsel), for OptumHealth Behavioral Solutions and another, respondents.

### OPINION OF THE COURT

SPAIN, J.

Petitioner is the collective bargaining agent for state employees who are members of the Security Services Unit, most of whom receive health benefits through the Empire Plan, which includes mental health and substance abuse treatment benefits. These mental health and substance abuse treatment benefits were provided for approximately 10 years through a contract with GHI, as insurer, and Value Options, the third-party administrator (hereinafter GHI/Value Options); that contract expired at the end of 2008. Prior to that expiration, requests for proposals were sent out and, upon review of the proposals, the contract to provide mental health and substance abuse treatment benefits was awarded to respondent United Healthcare Insurance Company of New York, as insurer, and respondent OptumHealth Behavioral Solutions, as third-party administrator (hereinafter United/Optum).

Petitioner filed a grievance in September 2008 challenging the replacement of GHI/Value Options with United/Optum, alleging that such a replacement violated a provision in the collective bargaining agreement (hereinafter CBA) requiring approval of the Joint Committee on Health and Dental Benefits.[1] In that grievance, which was the subject of an arbitration proceeding, petitioner sought, as a remedy, an order requiring the state to discontinue negotiations with United/Optum and to take steps

---

1. That Joint Committee, established by section 12.10 of the CBA, consists of six members selected by the state and petitioner, equally.

to ensure that GHI/Value Options continue in its current capacity as provider/administrator of the mental health and substance abuse treatment benefits "unless and until Joint Committee approval of such a change is obtained." Notably, there is no dispute that the benefits provided by United/Optum are identical to those provided by GHI/Value Options. Petitioner's grievance centered on the fact that the network of participating providers is not identical under both plans; it alleged that, among other consequences of the replacement, some of its members currently receiving treatment under GHI/Value Options will be forced to change providers, to pay out-of-pocket expenses to continue treatment with former providers not participating in United/Optum, or may discontinue treatment.[2]

Petitioner then commenced a special proceeding seeking a preliminary injunction enjoining the replacement of GHI/Value Options pending a determination in the arbitration (see CPLR 7502 [c]). Respondents Department of Civil Service and Governor's Office of Employee Relations and United/Optum opposed any injunctive relief, disputing, among other things, petitioner's interpretation of the CBA as requiring Joint Committee approval in these circumstances. United/Optum cross-moved to stay arbitration, contending that requiring Joint Committee approval of this contractual change in a health insurance carrier and administrator would violate the state statutory scheme, and the public policy it embodies, for the procurement of services based upon the "best value" (State Finance Law § 163 [4] [d]; [10]); as such, it was not arbitrable.

Supreme Court dismissed the petition, denying the request for injunctive relief and, sua sponte,[3] stayed arbitration. Petitioner now appeals, challenging the stay of arbitration as improper on the ground that an arbitrator could fashion a remedy that would not be contrary to the public policy implicated here.

---

**2.** As part of the replacement, a transition of care benefits clause provided continuation of coverage for 90 days for employees receiving treatment at the time of the transition.

**3.** While the state respondents raised in their answer the objection in point of law that the dispute was not arbitrable, it did not join United/Optum's cross motion to stay arbitration or otherwise oppose proceeding to arbitration at the hearing on the motions. For that reason, and because United/Optum was not a party to the arbitration proceeding (since it is not a party to the CBA), Supreme Court permissibly characterized its decision to stay arbitration on public policy grounds as sua sponte. This merely reflected that the state respondents who were parties to the arbitration agreement did not formally seek that relief.

We affirm. Under the two-prong inquiry governing arbitrability of disputes, courts must ascertain whether the parties may arbitrate their dispute and, if so, whether they agreed to do so (*see Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 78-79 [2003]). Under the first prong, our inquiry is whether "there is any statutory, constitutional or public policy prohibition against arbitration of the grievance" (*Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 278 [2002]) and "the subject matter of the dispute controls the analysis" (*Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273, 280 [2000]). A court must stay arbitration if it concludes, after examining the parties' contract and the implicated statutes, "that the granting of *any* relief would violate public policy" (*id.* at 284; *see Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519 [2007]).

Petitioner's grievance is premised upon section 12.13 of the CBA, which provides that "[a]t the demand of the Joint Committee on Health and Dental Benefits the State shall request proposals from existing or other carriers, or alternative third party administrators, for the Empire Plan, Dental, Drug and Vision Plans providing the benefits are identical. A replacement insurance carrier or third party administrator will not be selected without Joint Committee consent."

The public policy at stake here is embodied in the State Finance Law, in which the Legislature set forth a procurement process for the state's purchase of goods and services (*see* State Finance Law art 11). Pursuant to that scheme, specifications of the services to be provided "shall be designed to *enhance competition,* ensuring the . . . services of any offerer are *not given preference* except where required by this article" (State Finance Law § 163 [1] [e] [emphases added]). Critically, "[s]ervice contracts *shall* be awarded on the basis of *best value* to a responsive and responsible offerer" (State Finance Law § 163 [4] [d]; [10] [emphases added]). Procurement of services must be competitive (*see* State Finance Law § 163 [7]) and "the selection among multiple contracts at the time of purchase shall be the most practical and economical alternative and shall be in the best interests of the state" (State Finance Law § 163 [10] [c]). The well-recognized purposes of competitive bidding statutes are "(1) protection of the public fisc by obtaining the

best work at the lowest possible price; and (2) prevention of favoritism, improvidence, fraud and corruption in the awarding of public contracts" (*Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.*, 88 NY2d 56, 68 [1996]; *see Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 236 AD2d 48, 52 [1997], *affd on other grounds* 92 NY2d 579 [1998]).

Petitioner's request that section 12.13 of the CBA be interpreted and enforced so as to require Joint Committee approval prior to the selection of a new insurance carrier or administrator would effectively delegate to that committee control and veto power over the procurement of health benefit services provided pursuant to the CBA. It would impermissibly add another layer to the decision-making process, one not contemplated or provided by the legislatively crafted procurement scheme (*see Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d at 285). Faced with an expiring contract with a current insurance carrier/administrator, the state would be hog-tied, unable to enter *any* contract with *any* replacement carrier unless approval of the Joint Committee were forthcoming. That is, even were the state to solicit competitive bids and determine that one bid offered the "best value" from a responsive and responsible bidder, it would be prevented from entering a contract for health services with that bidder unless it obtained Joint Committee consent. To allow a Joint Committee to make the determinative decision in awarding a state service contract would constitute an impermissible delegation of the state's obligations in letting contracts. Such a result is untenable, and is irreconcilable with and would clearly violate the public policy obligating the state to award contracts for services, after a competitive bidding process, based solely upon which bid represents the "best value" (State Finance Law § 163 [4] [d]).

Indeed, petitioner appears to agree that the relief requested in its grievance—discontinuance of negotiations (now a contract) with United/Optum and continuance of GHI/Value Options as provider/administrator "until Joint Committee approval of such a change is obtained"—would violate the "best value" mandate and public policy. Contrary to petitioner's claims, we find that in this case, "the granting of *any* relief [by an arbitrator] would violate public policy" (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d

at 519 [internal quotation marks omitted]). The suggested potential remedies that petitioner argues would be available to an arbitrator and would not violate public policy all encroach upon the state's authority and responsibility in the selection of service providers and/or interfere with the state's existing contract with United/Optum, which was selected as the "best value" for the services in issue. While petitioner's underlying concerns are certainly understandable, arbitration of this grievance would violate state statutes and public policy and there is no remedy that would avoid that result if petitioner prevailed in arbitration. Accordingly, because arbitration is prohibited, our inquiry must end here (*see id.* at 519-521; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d at 280-284).

CARDONA, P.J., MERCURE, LAHTINEN and KANE, JJ., concur.

Ordered that the judgment is affirmed, without costs.