■ In the Matter of NEW YORK CITY TRANSIT AUTHORITY et al., Respondents-Appellants, v TRANSPORT WORKERS UNION OF AMERICA, LOCAL 100, Appellant-Respondent. [931 NYS2d 334]—

The New York City Transit Authority (hereinafter the NYCTA), its subsidiary, the Manhattan and Bronx Surface Transit Operating Authority (hereinafter MaBSTOA) (hereinafter together the petitioners), and the Transportation Workers Union of America, Local 100 (hereinafter the TWU), are parties

to a collective bargaining agreement (hereinafter the CBA). Pursuant to a modification of the CBA known as the surface consolidation agreement, the parties sought to eliminate "the artificial distinction" between the petitioners. The surface consolidation agreement contains, inter alia, the following provision: "Employees hired after the effective date of this agreement will be hired in the same ratio as the prior three-year average (Civil Service/Non-Civil Service Ratio). The ratio shall be established for each covered title." The ratio refers to the number of NYCTA employees, who are civil service employees (*see* Public Authorities Law § 1210 [2]), hired relative to the number of MaBSTOA employees, who are not civil service employees (*see* Public Authorities Law § 1203-a [3] [b]).

In June 2010, due to a budget shortfall, approximately 200 MaBSTOA bus operators and 120 NYCTA bus operators were laid off. By September 2010, the NYCTA had reinstated all of its laid-off bus operators and was planning on hiring an additional 140 bus operators from a competitive civil service list. During that same time, MaBSTOA had reinstated 11 laid-off bus operators and was planning on reinstating another 85 bus operators. The TWU filed a contract interpretation grievance alleging that the petitioners violated the hiring ratio provision in the surface consolidation agreement by not reinstating and hiring bus operators in accordance with the ratio. When the grievance was denied by the NYCTA, TWU submitted the dispute for arbitration. The petitioners commenced this proceeding to permanently stay the arbitration on the ground that the relief sought was prohibited by the Civil Service Law and the Public Authorities Law. The Supreme Court granted that branch of the petition which was to permanently stay arbitration of the grievance to the extent that the grievance sought to require the NYCTA to hire noncivil service bus operators to fill vacancies, and denied that branch of the petition which was to permanently stay arbitration of so much of the grievance as alleged that the petitioners violated the hiring ratio provision. The TWU appeals and the petitioners cross-appeal, and we affirm.

In the public sector context, determining whether a grievance is arbitrable requires a court to first determine whether " 'there is any statutory, constitutional or public policy prohibition against arbitration of the grievance' " (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519 [2007], quoting *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 278 [2002]). If there is no prohibition against arbitration,

then the court must determine "whether the parties in fact agreed to arbitrate the particular dispute by examining their collective bargaining agreement" (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d at 519).

Here, the petitioners only contended that the subject matter of the grievance was prohibited by law or public policy. In that regard, a dispute is not arbitrable "if a court can conclude ' "without engaging in any extended factfinding or legal analysis" ' that a law ' "prohibit[s], in an absolute sense, [the] particular matters [to be] decided" ' by arbitration" (*id.*, quoting *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 8-9 [2002]).

Contrary to the petitioners' contention, no statute or public policy prohibits, in an absolute sense, the petitioners from agreeing that each petitioner would hire employees under a covered title at a specified ratio, including the provisions of the Civil Service Law governing appointments of civil service employees (*see* Civil Service Law §§ 51, 61) and the provisions of the Public Authorities Law establishing the civil service/non-civil service distinction between employees of the petitioners (*see* Public Authorities Law § 1203-a [3] [b]; § 1204 [6]; § 1210 [2]) and granting to each petitioner the general power "to manage, control and direct the maintenance and operation of transit facilities" (Public Authorities Law § 1204 [15]; *see Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d at 521-522; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d at 9-10; *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.]*, 37 NY2d 614, 617-618 [1975]). Therefore, the Supreme Court properly denied that branch of the petition which was to permanently stay arbitration of so much of the grievance as alleged that the petitioners violated the hiring ratio provision in the surface consolidation agreement.

The TWU's remaining contention is without merit. Mastro, J.P., Florio, Eng and Sgroi, JJ., concur.