In the Matter of BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK et al., Appellants, v MICHAEL MULGREW et al., Respondents. [967 NYS2d 8]—

Order, Supreme Court, New York County (Joan B. Lobis, J.), entered August 2, 2012, which denied petitioner The Board of Education's (DOE) petition to vacate the arbitration award and

granted the cross-petition of respondents Michael Mulgrew, as President of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO (UFT Union), and Ernest Logan, as President of the Council of School Supervisors and Administrators, Local 1, American Federation of School Administrators, AFL-CIO (collectively Unions), to confirm the arbitration award, unanimously affirmed, without costs.

The DOE filed a plan seeking approval and grant money from the State Education Department (SED) to close 24 underperforming schools and to subsequently reopen 24 "new" schools in the identical locations and facilities. The SED conditionally approved the plan. The Unions filed grievances to the extent that the plan proposed to "excess" the staff of the closing schools, claiming that the plan to open new schools was a pretext to circumvent established procedures in the collective bargaining agreements (CBAs) for removing unsatisfactory teachers and other personnel. The Unions also claim that the plan circumvented the CBAs' requirements that excessing of teachers, referring to those let go through no fault of their own, be done on the basis of seniority.

After a six day hearing, the arbitrator concluded that although the DOE had not waived its right to contest whether the parties' dispute was arbitrable, it was, nonetheless, arbitrable. On the merits, he concluded that the plan had as its primary, if not sole, objective, avoiding undesirable teachers by excessing them under CBA provisions relating to closed or phased out schools, which violated CBA requirements that excessing be done on the basis of seniority. The Supreme Court denied the petition to vacate the award and granted the cross-petition to confirm the arbitration award.

We find that the grievances were arbitrable under the CBAs and that the arbitrator neither exceeded his powers under the CBAs, nor violated public policy in resolving the merits of the parties' disputes. The CBAs provide that unresolved grievances concerning the application or interpretation of the CBAs are subject to arbitration. As relevant here, the definition of a grievance under the CBAs does not include any matter for which a method of review is proscribed by law, or any rule or regulation of the SED having the effect of law. The CBAs further provide that an arbitrator is without power to make any decision "[l]imiting or interfering in any way with the powers, duties or responsibilities of the Board under its by-laws, applicable law and rules and regulations having the effect of law."

At their core, the grievances seek only to have the arbitrator consider the interpretations of the CBAs and whether the plan,

if implemented as written, violates the contractual rights and responsibilities of the parties. DOE's argument that arbitration necessarily interferes with the SED's statutory and regulatory authority is unpersuasive. While broadly referencing educational laws and regulations, the DOE fails to identify any law that "prohibit[s], in an absolute sense, [the] particular matters [to be] decided" (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519 [2007] [internal quotation marks and citations omitted]), nor is there a showing of non-arbitrability, or a violation of public policy (*id.*; *see also Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 81 [2003] ["(i)t is only when the interest in maintaining adequate standards is attached to a well-defined law that public policy is implicated"]). The underlying grievance in no way impinges on the authority of the SED to approve a plan for the closure or the reopening of the 24 underperforming schools as new schools under the Education Law (Education Law § 2590-h). Nor can the DOE rely on its own inclusion of proposed staffing changes in its plan to close schools to support its argument that staffing issues are now a state policy, law or regulation having the effect of law, which removes them from the dispute resolution regimen provided in the CBAs.

The arbitrator was well within his authority to define the term "new," as it pertains to schools, which was not defined by the collective bargaining agreement he was charged with interpreting (*see Salamino v Board of Educ. of the City School Dist. of the City of N.Y.*, 85 AD3d 617, 618 [1st Dept 2011] ["the arbitrator was required to give meaning to (a) term" not defined by the CBA]). It "cannot [be] conclude[d] that the arbitrator acted arbitrarily and capriciously in using" (*id.*). the generally recognized definition of the word "new." Nor was the arbitrator bound to conclude that the definition of a "new" school under the Education Law must be the same as the definition of a "new" school under the excessing provisions of the CBAs. DOE's arguments attacking the merits of the arbitrator's decision as violating public policy largely mirror its arguments made regarding arbitrability and are rejected for the same reasons.

The Unions' grievance does not challenge either the DOE's right to put forth a plan to close schools or the SED's right to approve such a plan. It seeks only a determination regarding the interpretation and implementation of staffing requirements under the CBAs. The Unions were not, therefore, relegated to

raising their dispute in a CPLR article 78 proceeding (*see Matter of Civil Serv. Empls. Assn., A.F.S.C.M.E., Local 1000, AFL-CIO v County of Nassau*, 249 AD2d 472 [2d Dept 1998]).

We have considered the petitioners' remaining arguments and find them unavailing. Concur—Andrias, J.P., Sweeny, Freedman, Feinman and Gische, JJ.